[S. F. No. 11348. In Bank.—January 31, 1927.]

A. E. RUSSELL et al., Respondents, v. CHARLES H. RAMM, Appellant.

[1] BROKER'S COMMISSIONS—FINANCIAL ABILITY AND WILLINGNESS OF PURCHASER—SUFFICIENCY OF EVIDENCE.—In this action by a real estate broker to recover commissions for services in the proposed sale of real and personal property, it is held that the evidence was sufficient to make a *prima facie* showing that the proposed purchasers were ready, able, and willing to complete the transaction had the seller not repudiated the same, and that the burden was cast upon the defendant to overcome the showing, and that as the showing was not overcome, it is sufficient to base a finding upon in favor of the plaintiff.

[2] ID. — PLEADING — DEFECT IN AMENDED COMPLAINT — CURING BY ANSWER.—In such a case, the failure of an amended complaint to contain an averment that the plaintiffs procured a purchaser for the property referred to in the agreement and described in the amended complaint who was ready, willing, and able to purchase the same, is cured by an answer admitting the execution of the agreement and authority in the plaintiffs to negotiate the sale upon the terms specified, but expressly denying that plaintiffs procured, at the time and upon the terms and conditions specified in the agreement, a party willing, able, and ready to purchase the property, especially where the case was tried upon the theory that such issue was tendered by the pleadings.

[3] ID.—ANSWER TO AMENDED PLEADING.—The rule, as generally approved by the authorities, is that a plea to the original declaration will be treated as a plea to an amended declaration, if applicable and responsive thereto, but if not responsive it will be treated as a nullity.

[4] ID.—DEFECTIVE PLEADING—OBJECTION TO EVIDENCE.—Where a complaint attempts to set forth matters essential to the statement of a cause of action, but does not fully measure up to indispensable requirements, and yet contains an allegation from which an essential fact is necessarily to be implied, an objection to evidence upon the ground that such issue has not been raised in the complaint should be as specific as an objection to a complaint by demurrer upon the ground of uncertainty or ambiguity.

[5] ID.—CONFLICTING EVIDENCE—APPEAL.—Where there is a substantial conflict in the evidence, the decision of the jury or trial court upon the facts is conclusive and binding upon the courts of review.

[6] ID.—REFUSAL OF OWNER TO SELL—RIGHT OF BROKER TO COMMISSION.—Where the owner of the property, in such a case, refuses to sell to the purchaser procured by the broker upon any ground other than that of the inability of the proposed purchaser to purchase, the owner cannot, in an action against him by the broker for compensation, successfully set up such ground as a defense, unless the fact constituting that ground is included in the agreement between the owner and broker as one of the terms or conditions which must be met or complied with by the broker before he has earned or is entitled to compensation for his services.

[7] ID.—REFUSAL OF WIFE TO JOIN IN CONVEYANCE.—It is the general rule in such a case that the refusal of the wife of the owner to join in a conveyance of the property to the proposed vendee does

---

3.    See 21 Cal. Jur. 189.
4.    See 2 Cal. Jur. 269.
5.    See 2 Cal. Jur. 621; 2 R. C. L. 194.
7.    See 4 Cal. Jur. 597.

not in itself operate to deprive the broker of his right to compensation.

[8] ID.—DEMAND FOR ABSTRACT OF TITLE—CONSTRUCTION OF CONTRACT. In such a case, where the contract authorizing the brokers to obtain the purchasers expressly provided that the owner should furnish to any proposed buyer a "deed and abstract, or certificate of title, showing clear title in" the owner to date, a demand by the proposed purchasers, as a condition to the execution of a contract of sale, for a certificate of title, was within the terms of the contract, and the contention that this provision meant that the owner was to furnish an abstract or certificate of title only when the deed was tendered, and not at the time the contract of sale was executed, cannot be maintained.

[9] ID. — DESCRIPTION OF LAND — UNCERTAINTY — CURING OF. — Much greater liberality is allowed in construing and curing defective descriptions of property in brokers' contracts than in deeds to land, for, so far as the statute of frauds is concerned, the terms of the employment are the essential part, and such contracts will not be declared void merely because of a defect, uncertainty, or ambiguity in the description of the property to be sold or exchanged when such defect can be cured by the allegation or proof of extrinsic facts and circumstances.

[10] ID.—STATUTE OF FRAUDS—PLEADING.—In order that the defendant in any case may avail himself of the benefit of the statute of frauds, where it does not appear from the face of the complaint that the statute has not been complied with, it is necessary that it should be pleaded and proved.

---

(1) 9 C. J., p. 600, n. 50, p. 645, n. 97, p. 646, n. 98, 2, p. 654, n. 40, p. 655, n. 43. (2) 31 Cyc., p. 264, n. 9. (3) 31 Cyc., p. 460, n. 75, p. 461, n. 76, p. 465, n. 29, p. 714, n. 55, p. 715, n. 56. (4) 38 Cyc., p. 1375, n. 96. (5) 4 C. J., p. 858, n. 3, p. 883, n. 33. (6) 9 C. J., p. 591, n. 19, p. 592, n. 21. (7) 9 C. J., p. 626, n. 78. (8) 9 C. J., p. 591, n. 19, p. 599, n. 47, p. 624, n. 66, p. 655, n. 43. (9) 9 C. J., p. 556, n. 96; 22 C. J., p. 1283, n. 93, p. 1287, n. 8, p. 1289, n. 46 New; 39 Cyc., p. 1224, n. 43, p. 1225, n. 45. (10) 9 C. J., p. 639, n. 65 New; 27 C. J., p. 368, n. 10, p. 369, n. 13, p. 379, n. 31.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

10. See 12 Cal. Jur. 940; 25 R. C. L. 741.

Short, Lindsay & Woolley, Leroy G. Smith, W. M. Conley, Philip Conley, George Cosgrave and Lindsay & Conley for Appellant.

Harris & Hayhurst and R. E. Gibson for Respondents.

RICHARDS, J.—The petition for a hearing herein after decision by the district court of appeal in and for the third appellate district was granted chiefly for the reason that the opinion of Mr. Justice Hart therein did not refer to or sufficiently distinguish the decision of this court in the case of *Merzoian* v. *Kludjian,* 183 Cal. 422 [191 Pac. 673], from the case at bar. We are of the opinion that both as to the facts and the principles of law involved the cases are easily distinguishable. In the case of *Merzoian* v. *Kludjian, supra,* it affirmatively appeared that the purchaser who had been procured by the broker as one ready, able, and willing to purchase the property in question had neither the money, nor the property,. nor the credit which would suffice to enable him unaided to complete said purchase according to the terms of his contract. In the case at bar a quite different situation is presented. The proffered purchasers were two brothers, named Fred W. and H. H. Moore, both of whom had made a written offer to purchase the Ramm properties, by the terms of which they were to make, and did make, a deposit of $1,000 at the time of such offer and were to pay "$34,000 additional when you shall furnish certificate or abstract of title from which it shall appear that you can convey good title, . . . It being understood that at the time of such payment of $34,000 formal contract of sale is to be executed." The foregoing offer was verbally accepted by the seller, it being understood that a more formal contract was thereafter to be executed. Fred W. Moore was called and examined as a witness for plaintiff with respect to the readiness, ability, and willingness of himself and his brother to complete their proposed purchase of said properties. He testified that he had resided for several years at Dinuba, where the Ramm properties were situated, and was familiar with said properties and was also on sufficiently familiar terms of acquaintance with the owner thereof to call him "Charlie," from which

fact it might well be inferred that the owner was equally familiar with the properties and financial standing of his neighbors, the proposed purchasers, and for that reason did not urge their inability to complete the transaction as his ground for repudiating the same. The witness testified that he and his brother had made an offer in writing to purchase said properties; that they were buying the same together; that they were ready, able, and willing to purchase said properties and were able to raise the $35,000 in cash required for the first payment thereon; that they had considerable property at Dinuba and also had considerable of the money in bank; that the witness himself had over $15,000 in bank, and that while he did not know how much his brother had he knew they were able to take care of the deal; that he had several personal interviews with the seller, going over the properties and checking up on the personal property which was to go with the land, as a result of which a formal contract of purchase was drawn, which provided that at the time of the execution and of the production of a sufficient abstract or certificate of title the said installment upon the total purchase price was to be paid; that such formal contract when so drawn was submitted to the seller and was read by him; but that the latter refused to execute the same or to go further with the transaction, giving as his sole ground therefor that his wife would not sign the papers; that both the witness and the agent pursued the seller for several days thereafter in an effort to persuade him to go on with the transaction and that his sole objection to doing so was that his wife would not sign the papers.

[1] We are of the opinion that the plaintiff by the foregoing evidence sufficiently made a *prima facie* showing that the proposed purchasers of the properties in question were ready, able, and willing to complete the transaction had the seller not repudiated the same. We are also of the opinion that the plaintiff having made this *prima facie* showing, the burden was cast upon the defendant to overcome the same, either by developing upon cross-examination that the purchasers' money and property in possession, admittedly considerable, was insufficient to enable them to command adequate credit to complete the negotiations, or by making affirmative proof to the same effect in defense of the plain-

tiff's asserted cause of action. The defendant Ramm, who was living and present at the time of the trial, did neither of these. Upon cross-examination of the purchaser, counsel for defendant made no inquiry into the extent of his properties or those of his brother beyond the inquiry as to the amount of the money of each in bank, and offered no evidence upon that subject in aid of his defense. The plaintiff's *prima facie* showing was not therefore broken down; and this being so, it furnished a sufficient basis for the finding of the trial court in the plaintiff's favor upon that issue. As to the principles of law laid down in *Merzoian* v. *Kludjian, supra,* it may be conceded that they were correct as applicable to the facts of that case, but the rule therein declared which would require a would-be purchaser of property to make a showing either that he had the purchase price on hand in the form of money or that he had consummated such a loan upon his available properties or securities in anticipation of the preparation and execution of the formal contract of purchase as would enable him to comply with its terms in advance of its execution, would be to lay down too drastic a rule governing business transactions of the kind presented in the instant case. With respect to the other features of this case treated in the decision of the district court of appeal, we are satisfied with the disposal of the same as embraced in the opinion of Mr. Justice Hart, and we accordingly adopt the same. Said opinion reads as follows:

"Subsequent to the trial of this case the defendant Charles H. Ramm passed away and his widow, Pearl E. Ramm, was duly appointed administratrix of his estate.

"The plaintiffs, duly licensed real estate brokers and engaged in the town of Dinuba, Tulare County, in the business of selling and buying and also negotiating the sale and purchase of real estate for and in behalf of other parties, brought this action to recover from defendant's intestate the sum of $3,250.00, which the complaint alleges constituted the sum total of commissions earned by plaintiffs for procuring purchasers of a certain tract of land of sixty acres and certain personal property belonging to defendant. The complaint alleges that, on or about the 5th day of February, 1920, at said town of Dinuba, the defendant, by an instru-

ment in writing appointed plaintiffs to sell said land and personal property for the total sum of $120,000.00. The memorandum of agreement is by the complaint expressly made a part thereof. It reads as follows:

" 'Dinuba, Calif. Jan. 5, 1920'

" 'I hereby appoint RUSSELL & NEWTON my agents with exclusive right to sell the property described on the reverse side of this sheet, for the sum of $120,000 One Hundred twenty thousand Dollars to be paid as follows, to-wit: Cash on 40 ac $20,000 on 20 ac 15,000.00, payments of terms on 40 ac $2500.00 each year & on 20 ac $1000 each yr until paid with privilege of paying more at any time or any less amount hereafter authorized by me and to receive deposit on same.

" 'I agree to furnish Deed and Abstract, or Certificate of Title *showing clear title in me to date,* and should Russell & Newton sell such property, or be instrumental in selling the same, I agree to pay them 5 per cent commission on the above named selling price $10000 and bal 2½% commission of the consideration for which said property is sold over and above the purchase price above specified. This authorization is to remain in full force and effect 5 days and thereafter until revoked by me in writing.

" 'Russell & Newton shall be entitled to commission, as above set out, on any sale made to parties to whom they may have shown or exhibited this land during the term of this agreement, even though said sale is not consummated until after the term hereof, and I agree to pay such commission in such event.

" 'Name                    CHAS. H. RAMM.'

"On the reverse side of said writing are the following notations:

" 'Name          Charles Ramm

" '60  acres                $120,000

" 'Located one mile from Dinuba

" ' [Description of personal property omitted.]'

"The complaint, construing said writing, alleges that Ramm agreed to pay them for procuring a purchaser of said properties five per cent upon $10,000.00 of the purchase price and two and a half per cent on the balance thereof. The complaint proceeds:

" 'V.

" 'That within five (5) days from the making and sign-
ing of said memorandum by said defendant, these plaintiffs
procured purchasers for said land, to-wit: Fred W. Moore
and H. H. Moore, who were and are ready, able and willing
to perform said contract to be sold to said purchasers ac-
cording to the terms set forth in said memorandum of agree-
ment, and said purchasers then . and there offered to
purchase said land for said price of One Hundred Twenty
Thousand Dollars ($120,000.00) according to said terms; that
these plaintiffs and said purchasers demanded of defendant
that he sell said land to said persons according to the terms
of said agreement, and then and there offered to do and
perform said agreement in every particular according to the
terms thereof.

" 'VI.

" 'That said defendant then and there refused to sell
said lands to said persons according to the terms of said
agreement, or at all, and ever since said date has failed
and refused, and now fails and refuses to sell said land upon
any terms, or to carry out or perform said agreement.

" 'VII.

" 'That by reason of said premises, said plaintiffs have
earned as their commissions in procuring said purchasers
for said land the sum of Thirty-two Hundred Fifty Dollars
($3250.00), and defendant has become, and is indebted to
these plaintiffs in said sum of Thirty-two Hundred Fifty
Dollars ($3250.00) and that plaintiffs have demanded of
said defendant that he pay to them said sum, but to pay the
same or any part thereof, defendant has failed and refuses,
and still fails and refuses.'

"The answer admits paragraph 1 of the complaint (alleg-
ing that Plaintiffs are duly authorized real estate brokers
and dealers in real estate), admits paragraph 2 (alleging
the appointment of plaintiffs by defendant as his agents to
negotiate the sale of the properties referred to in the memo-
randum of agreement), and also admits the allegations of
paragraph 4 (explaining the terms of the authorization
to sell), but specifically denies paragraphs 5, 6 and 7 herein-
above presented.

"The cause was tried by the court sitting without a jury.
The findings are general and. are to the effect that all of the

allegations of each and all of the paragraphs of the complaint are true and that 'each and all of the allegations and denials' of paragraphs one, two, five, six and seven of the answer are untrue. Accordingly, the plaintiffs were awarded judgment in the sum of $3,250.00, with interest, etc., and from said judgment the defendants appeal upon a record prepared in accordance with the provisions of section 953a of the Code of Civil Procedure.

[2] ''The point first pressed is that an amended complaint, which is in the record, utterly fails to state a cause of action for the relief sought because it contains no averment that the plaintiffs procured a purchaser of the properties referred to in the memorandum of agreement and described in said amended complaint ready, willing and able to purchase the same. The consideration and the disposition of this point will require an explanation of the circumstances under which the so-called amended complaint found its way into the case.

''It will be observed that neither in the memorandum agreement nor in the complaint is there a specific description of the real property which it was claimed by plaintiffs that defendant had authorized them to sell. On the close of their case—that is, after they had completed the introduction of all the testimony they intended to present in their original case—the plaintiffs rested, and the defendant did likewise—that is, he then announced that he had no testimony to offer as in rebuttal of the case made by the plaintiffs. Thereupon one of the attorneys representing the plaintiffs stated to the court that, in view of certain facts which had been developed by the evidence introduced in support of the complaint, he desired to move the court for leave to file an amendment to the complaint so that the pleading of plaintiffs would conform to the proof as made, referring particularly to the evidence disclosing a description by metes and bounds of the real property referred to in the memorandum agreement, and at the same time submitted or read to the court a draft of the proposed amendment, and addressed the court relative thereto as follows: 'If the court please, before the matter of argument, in view of certain testimony that has been introduced, we will ask at this time for leave to amend the complaint in this par-

ticular: Immediately after paragraph 3 we would ask to amend by adding this paragraph, we will call it 3½': The proposed amendment contained a specific description of said real property by metes and bounds and the averment that defendant was, at and prior to the execution of the agreement upon which this action is predicated, the owner of said property. Counsel for defendant promptly objected to the allowance of the amendment on certain grounds, one of the grounds being that defendant had not been served with notice of the application for leave to file the proposed amendment, notice being necessary, since, as the argument proceeded, 'there is nothing here that the defendant is the owner of or ever was the owner of any of this land, and we will have to deny these allegations if the amendment is allowed, and try the case over again.' To which counsel for plaintiffs replied by offering to 'stipulate that they (the allegations of the proposed amendment) be deemed denied,' but counsel for defendant refused to yield assent to that proposition. Thereupon the court stated: 'Well, I think the court, in any event, will reserve the ruling upon this application until we have more time to consider it. I recollect nothing you put in evidence about sandy soil. I recollect nothing in evidence about sandy soil,' the proposed amendment having described the soil of the real property concerned herein as being 'sandy.' The case was thereupon 'submitted on briefs to be filed in 10, 10 and 5 days.' The reporter's transcript or record contains nothing further in relation to the application to amend the complaint as indicated. In other words, there is nothing in said transcript or record indicating that the court ruled on the application, either allowing or disallowing it. The judgment roll, however, embodies, among the other papers constituting the same, not an amendment to the complaint but what purports to be an amended complaint. After stating that it has been filed by leave of the court first had and obtained, 'for the purpose of making said complaint conform to the proofs,' it re-avers paragraphs 1, 2, 3 and 4 of the complaint, omits paragraph 5 of said original pleading, and numbers as paragraph 5 the averments as to the description and ownership by defendant of the real property as they were substantially proposed as an amendment to the complaint, to be numbered 'paragraph 3½,' as hereinabove indicated. The said paragraph 5 is fol-

lowed by paragraphs 6 and 7, containing the precise allegations of the paragraphs likewise numbered in the original complaint. The amended pleading was not signed by either of the attorneys for the plaintiffs nor either of the latter, but was verified by the plaintiff Russell on the 27th day of October and filed on the following day, which was ten days after the day (October 18th) on which the trial of the cause was commenced and completed.

"Upon the record as it is thus presented, the defendant, notwithstanding that the reporter's transcript does not directly or expressly show that the court granted the application to file the amended, or amendment to the complaint, invokes the presumption, upon the clerk's certification of the judgment roll, of which the purported amended complaint is made a part, that said amended pleading was filed by leave of the court, and further invokes the rule that the amended complaint supersedes and wholly nullifies the original complaint. (*Kuhland* v. *Sedgwick,* 17 Cal. 123; *Barber* v. *Reynolds,* 33 Cal. 497; *Mecham* v. *McKay,* 37 Cal. 154; *Osment* v. *McElrath,* 68 Cal. 466, 470 [58 Am. Rep. 17, 9 Pac. 731]; *Pfister* v. *Wade,* 69 Cal. 133, 138 [10 Pac. 369]; *Schneider* v. *Brown,* 85 Cal. 205, 206 [24 Pac. 715]; *Collins* v. *Scott,* 100 Cal. 446 [34 Pac. 1085]; *Ralphs* v. *Hensler,* 114 Cal. 196 [45 Pac. 1062]; *Whitehead* v. *Sweet,* 126 Cal. 67 [58 Pac. 376]; *Schlake* v. *Consolidated Concessions Co.,* 69 Cal. App. 207 [230 Pac. 974].)

"The situation here, upon its face, is rather unique. It is difficult to work out any sound reason for the filing of the amended complaint a number of days after the trial had been completed, or, for that matter, for filing it at all, upon any other theory than that said pleading was intended merely to function as an amendment to the original complaint to the extent only of making the complaint conform to the evidence disclosing the exact description of the real property referred to in the memorandum of agreement. We think it probable that such was the sole purpose of the amended pleading, since it is not conceivable that counsel for the plaintiffs would file an amended complaint pretermitting allegations contained in the original complaint which, it may be assumed not only from their recognized learning in the law but from the fact that they did insert such allegations of fact in their original pleading, counsel well knew

were absolutely necessary to the statement of a cause of action for the relief herein sought. Indeed, we do know, from the proceedings relative to the matter occurring on the close of the taking of testimony, that, in point of fact, the purpose of the plaintiffs was merely to add to the complaint as originally filed another paragraph (to be numbered 3½, as was then suggested) whereby an accurate description of the real property involved therein as it was revealed by the evidence would be set forth in that pleading. We have no doubt that the omission of paragraph five of the original complaint from the amended complaint was unintentional and an inadvertence. These considerations, however, cannot affect or successfully be set up, so far as this court is concerned, in impeachment of the judgment roll as it was certified by the clerk, or, in other words, as against the presumption that the amended complaint, as it itself declares, was filed by and upon the permission of the trial court previously granted, nor can they interrupt the operation of the rule that said amended pleading supersedes and thus has forced from the judgment roll the original complaint. But with these propositions in mind, we are still of the opinion that the essential issues of fact in an action of this character were, nevertheless, herein sufficiently presented and, as so presented, were tried and adjudicated. We have the right to presume that a copy of the amended complaint was duly served on the defendant. At all events, we have it from the record of the proceedings of the trial that the defendant knew that there was a motion made at the close of the plaintiff's case for leave to amend the complaint and that, so far as the record shows to the contrary, was still pending and undisposed of at the time the cause was ordered to be submitted upon briefs to be subsequently filed by the respective counsel. Notwithstanding all this, no demurrer or answer to the amended complaint was filed. The answer to the original complaint, however, is included within the judgment roll here, and we may assume, if not presume, that defendant was content to let the original answer stand as the answer to the amended complaint. [3] The rule, as generally approved by the authorities, is that 'a plea to the original declaration will be treated as a plea to an amended declaration, if applicable and responsive

thereto.' Of course, if the answer or plea be not responsive to the complaint or declaration, then it will be treated as a nullity. (See 31 Cyc., pp. 460, 461, and cases cited in the footnotes.) That the answer is responsive to the amended complaint here, there can be no doubt. As pointed out above, the amended complaint contains all the allegations of the original complaint, save and except that expressly and directly asserting that plaintiffs procured purchasers of the properties who were ready, willing and able to purchase the same. Its allegations may, then, thus be summarized: That defendant, in a writing subscribed by him, authorized the plaintiffs to negotiate the sale of the properties on certain terms and conditions and for a specified compensation to plaintiffs; that the real property (specifically described) was that referred to in the memorandum of agreement, and 'that said sixty acres was the real property intended by the parties to said agreement as the property for which the said plaintiffs were to obtain a purchaser as mentioned in said written agreement.' Then follows paragraph six, declaring 'that said defendants then and there refused to sell said lands to said persons according to the terms of said agreement,' etc. This allegation in paragraph six is, of course, entirely too vague and uncertain to justify the declaration that it properly states the fact which it was necessary to allege to state a cause of action, viz.: That the plaintiffs, within the time specified in the agreement, procured a proposed purchaser or proposed purchasers of the properties ready, willing and able to purchase the same 'according to the terms of said agreement,' but the allegation does sufficiently imply that they had procured such purchasers to justify the conclusion that the answer to the original complaint is, in that vital particular, as manifestly it is in the other essential particulars, 'responsive to the amended complaint.' Treating, therefore, said answer as an answer to the amended complaint, we have this situation, viz.: That defendant admits the execution of the written agreement and that thereby he authorized plaintiffs to negotiate the sale of the properties, within the time named, upon the specified terms and conditions, but expressly denies that plaintiffs procured, at the time and upon the terms and conditions specified in the agreement, a party willing, able and ready to purchase the properties. Thus the answer came to the aid

of the amended complaint and cured its defective allegation
as to the procurement by plaintiffs, within the time and
upon the terms and conditions set forth in the agreement,
of purchasers of the properties ready, willing, and able
to purchase the same upon said terms and conditions.
(*Slaughter, Admx., etc.,* v. *Goldberg, Bowen & Co. et al.,*
26 Cal. App. 318, 324, 325 [147 Pac. 90].)   Moreover (still
regarding the amended complaint and the answer to the
original as the only pleadings in the case), the action was
tried upon the theory that the issue as to the procurement
of the purchasers of the properties by plaintiffs within the
specified time and upon the stipulated terms and conditions
was squarely presented and tendered by the pleadings.   The
evidence addressed to the proof of that fact was offered and
received without objection.   It is true, that, on a few occa-
sions, objections were interposed by defendant to testimony
offered by plaintiffs to support the allegation of the com-
plaint that such purchaser or purchasers were so procured
but the objections were not specific but upon the general
grounds that the testimony was 'irrelevant, immaterial and
incompetent.'   [4]   Where, as is true of the amended com-
plaint here, a complaint attempts to set forth matters essen-
tial to the statement of a cause of action but does not fully
measure up to that indispensable requirement, and yet con-
tains an allegation from which an essential fact is necessarily
to be implied, the objection to evidence upon the ground
that such issue has not been raised in the complaint should
be specific (*Boyle* v. *Coast Imp. Co.,* 27 Cal. App. 714, 720
[151 Pac. 25]), or, in other words, such objection in such
case should be as specific as an objection to a complaint by
demurrer upon the ground of uncertainty or ambiguity,
etc.   But another answer to the contention that the judg-
ment is affected by a fatal infirmity in that it is without
the support of a complaint which states a cause of action,
for the reason that the amended complaint, which sup-
planted the original, does not contain the essential allegation
of the procurement of a purchaser, etc., lies in the indis-
putable fact that the action, as the court in its findings
expressly declared, was tried upon the issues tendered by the
answer to the original complaint, and, as seen, one of the
issues so directly tendered involved the question whether the

plaintiffs, within the time specified, procured a purchaser
or purchasers willing, ready and able to purchase the prop-
erties upon the terms and conditions upon which plaintiffs
were authorized to negotiate the sale of the same. Thus it
is perfectly clear, from whatever viewpoint the situation as
to the pleadings and the trial may, with legal propriety, be
considered, that the question whether the plaintiffs per-
formed the agreement on their part or the services called
for thereby was submitted as one of the issues to be tried
and adjudicated and which was in fact tried and adjudicated
as fully and completely as if the amended complaint had
never been introduced into the judgment roll and the plead-
ings stood only as they were originally filed.

"The point next urged for a reversal is that the findings
are not supported by the evidence. The point is without
merit. As already stated, the only testimony or evidence
presented at the trial was that introduced by plaintiffs, the
defendant having rested his case on the proofs so made.
As above pointed out, the fact that the defendant's intestate
conferred upon plaintiffs authority to obtain a buyer of the
land and personal property referred to in the written
memorandum mentioned within the time and on the terms
and conditions specified in said writing for the compensation
also specified therein, was and is admitted. It also stands
admitted that, at the time the transactions involved herein
took place, the plaintiffs were regularly licensed real estate
brokers. The evidence shows that Charles H. Ramm, at
all of said times, resided upon a sixty-acre tract of land
situated approximately one mile north of the center of the
town of Dinuba; that he owned forty acres of said land and
was then buying the remainder thereof (20 acres) from his
father. Twenty acres of the tract were planted to grapes of
the Malaga variety and a like number of acres thereof to
grapes of the Emperor variety. A dwelling house of six
rooms was standing on the east twenty acres, on twelve
acres of which grapes of the Emperor variety, four years
old, were growing, and on four and one-half acres of which
plum trees were growing. It appears that the proposition
to vest plaintiffs with authority to negotiate the sale of the
properties was first suggested by defendant's intestate, he
having said to them that, on account of ill health, he desired

to dispose of the ranch; that after the said proposition was so made, Newton, one of the plaintiffs, accompanied Mr. Ramm to the ranch, and after inspecting the properties and thus learning what properties, other than the ranch itself, were to be sold through plaintiffs, he (said Newton) immediately proceeded to look for a purchaser of said properties; that he found and took to the ranch certain prospective buyers, and among these were two parties by the names of Fred Moore and Harry Moore, brothers; that the Moores were pleased with the ranch and requested plaintiffs to furnish them with a detailed description of the land and all the other property which was to be embraced within the sale; that Newton thereupon made another visit to the ranch to obtain that information, and, securing it from defendant's intestate, presented it to the Moores. It was further shown that, on several different occasions thereafter, Newton took Mr. Fred Moore to the ranch; that, on one of these occasions, both Newton and said Moore had a conversation with Ramm regarding the personal property which it was intended should 'go with the place,' and also as to the terms upon which it could be purchased. It was shown that it was on the occasion of one of these visits that Newton made out the broker's agreement (attached to and made a part of both the original and amended complaint), and which was then signed by Mr. Ramm on his ranch, authorizing plaintiffs to procure a purchaser of the properties. On the last occasion on which Newton and Fred Moore visited the ranch, the former had in his possession said Moore's check for the sum of $1,000.00, the same to be used as a deposit upon the purchase price of the place. Newton stated to Ramm that he had said check in his possession and tendered it to Ramm, who, thereupon, addressing Newton, said: 'You are my agent—you hold the check.' On the same occasion, Fred Moore said to Ramm: 'I bought your ranch and I want to see the stuff that goes with the place, tools and all,' to which Ramm replied: 'All right,' and thereupon took Newton and Moore over the premises and pointed out the tools, horses and other articles of personal property which were to be included within the sale. It was further shown that on the Monday succeeding the visit to the ranch by Newton and Moore last spoken of, Ramm went to Newton's office and left

with the latter a complete list of the tools that were to go with the ranch on the sale thereof. Several days later, in accordance with a previous understanding between the parties, the plaintiff, Newton Ramm and the two Moores, met at the office of Attorney Green, in Dinuba, for the purpose of preparing an agreement of sale. At that meeting, said Green made memoranda of the details of the agreement or the sale with a view of committing the same to writing, but before he had completed the preparation of the contract, Ramm was called to the telephone and immediately thereafter left the lawyer's office, with the understanding that he, with the Moores and Newton, would again meet at said law office and complete the contract by the execution thereof by Ramm and the Moores. This meeting was subsequently held, and at that time the contract, already prepared, was signed by the Moores. Said proposed contract or writing constituted an offer to purchase the properties referred to in the writing, signed by Ramm, authorizing plaintiffs to sell said properties and contained a description of said properties; recited that the Moores had posted with the plaintiffs the sum of $1,000.00, 'as a guaranty of good faith'; that the proposed purchasers would pay to Ramm the additional sum of $34,000.00 when he had furnished to the said proposed purchasers a 'certificate or abstract of title from which it shall appear that you (Ramm) can convey good title . . . , it being understood that at the time of such payment of $34,000.00 formal contract of sale is to be executed, the balance of the purchase price in consecutive annual installments of $3,500.00, with interest thereon at the rate of 6 per cent per annum, payable annually.'

"The above document was delivered to Ramm at said meeting. He read it and then stated that his wife would not sign the papers, and refused to proceed with the deal. Notwithstanding this turn in the negotiations, the Moores and the plaintiffs continued in their efforts to consummate the sale, and, to that end, endeavored on different occasions, without avail, to persuade Ramm to complete the transaction upon the terms and conditions upon which he had authorized plaintiffs to sell the properties.

"Green, the attorney above spoken of, testified and corroborated in all important particulars Newton's testimony, from which the above statement of the facts is taken.

"Fred H. Moore, one of the proposed purchasers, testified that he and his brother, the other proposed purchaser, had sufficient financial means with which to carry out the deal according to the terms and conditions upon which the plaintiffs were authorized to negotiate the sale of the properties and as specified in the written offer by the Moores to purchase the same.

"It was not shown, or any attempt made to show that, at any time during the negotiations between plaintiffs and Ramm or between the former, the latter and the Moores that the name of Mrs. Ramm was ever mentioned in connection with the proposed sale, nor was it shown, or any attempt made to show, that she was ever at any time requested to sign any papers in connection with the transaction. There is no testimony that Ramm objected to the form of the offer or the terms and conditions as set forth in the proposed agreement or offer by the Moores to purchase the properties, the only objection to proceeding with the transaction being, as shown, that his wife had stated she would refuse to sign any papers or documents looking to the consummation of the sale.

"The above recital of the facts as they were disclosed by the testimony presented by the plaintiffs clearly confirms the statement heretofore made that the finding that the plaintiffs procured purchasers of the properties willing, ready and able to purchase the same is evidentially well supported. There is no conflict in the evidence upon the vital facts essential to the support of the findings and the judgment in an action of this character. The testimony is not inherently improbable, or, upon its face, characterized by an intrinsic weakness which would justify this court in passing upon the weight thereof. The solution of that question was, therefore, the sole function of the court, it having been selected to try the questions of fact. [5] The rule is too elemental and has been so often repeated in the decisions as to require the re-statement thereof that, even where the evidence addressed *pro* and *con* to the issue or issues is contradictory and there is thus produced therein a substantial conflict, the decision of the jury or trial court upon the facts is conclusive and binding upon the courts of review. For a much greater reason should this rule apply where, as here,

the testimony is not inherently improbable, and, upon its face, is all one way and uncontradicted. The only ground upon which Ramm refused to carry out the proposition to sell the properties to the Moores was, not that the latter were not willing, ready and able to purchase the same, but solely because his wife refused to join him in the sale and execution of the contract of sale. As seen, there is no testimony showing or even remotely tending to show that the consent of Mrs. Ramm to the sale or the requirement that she should join her husband in the execution of the contract of sale, or any of the preliminary negotiations or writings relative to the sale, was an element or factor in the contract between plaintiffs and Ramm whereby the former were authorized to find a purchaser of the properties. [6] Where the owner of property refuses to sell to the purchaser procured by the broker upon any ground other than that of the inability of the proposed purchaser to purchase, the owner cannot, in an action against him by the broker for compensation, successfully set up such ground as a defense, unless the fact constituting that ground is included in the agreement between the owner and broker as one of the terms or conditions which must be met or complied with by the broker before he has earned or is entitled to compensation for his services. It follows that the fact that Ramm's wife refused to join her husband in the transfer of the properties to the Moores does not in the least affect or impair the right of the plaintiffs to the compensation which Ramm agreed to pay them for securing purchasers of the properties. [7] Indeed, it is the general rule that the refusal of the wife of the owner to join in the conveyance of the property to the proposed vendee does not, itself, in a case of this character, operate to deprive the broker of his right to compensation. (See *Justy* v. *Erro,* 16 Cal. App. 519, 522 [117 Pac. 575], and cases therein cited; *Farrington* v. *McClellan,* 26 Cal. App. 375, 383 [146 Pac. 1051]; *Goodrich* v. *Turney,* 44 Cal. App. 516 [186 Pac. 806]; *Johnson* v. *Krier,* 59 Cal. App. 330, 333 [210 Pac. 966]; *Freeman* v. *Creelman,* 60 Cal. App. 14, 22, 23 [212 Pac. 56].)

[8] "The contention that, because the Moores demanded, as a condition to the execution of the contract of sale, a

certificate of title to the real property from Ramm, their proposal to purchase did not constitute an unconditional offer to purchase the properties and that for that reason the plaintiffs failed to procure in said Moores purchasers willing, ready and able to buy said properties, is without merit. By the writing authorizing the plaintiffs to obtain purchasers of the properties Ramm expressly agreed to furnish to any proposed buyer a 'deed and abstract, or certificate of title, showing clear title in me to date.' It is argued that the provision in said writing means and was intended to bear no other meaning, that defendant agreed to furnish an abstract or certificate of title only when the deed was tendered and not before, or at the time the contract of sale was executed. We cannot, as above intimated, yield our assent to that construction of said provision. If, as all the parties here seem to assume, the proposed contract was one of sale of the properties, then the execution thereof, which means that the cash payments required to be made at the time of the execution of the contract on the purchase price were then and there to be made, would operate to consummate the sale, and, obviously, before the contract was executed, the purchasers would be entitled to receive from the defendant duly authenticated evidence of his title to the properties. Such a situation, indeed, would clearly come within the language of the provision as it is construed by counsel for defendant. And we can perceive no reason for holding that the provision was not intended as well to apply to a contract for the sale of the properties, since it does not expressly or definitely fix the occasion on which the certificate of title is to be furnished. But it is further insisted that there was a failure on the part of the Moores to offer to purchase 'upon the terms of the agreement,' in that they offered therein to pay 'cash down' on the first payment the sum of $34,000.00 only, whereas, the agreement authorizing plaintiffs to sell the property called for a cash payment of $35,000.00. The written proposal of the Moores to purchase the properties specifically set forth, as has above been pointed out, the offer to make the initial payment as follows: 'One thousand dollars, which we have posted with Russell & Newton, as a guaranty of good faith,' and '$34,000.00 additional, when you (Ramm) shall furnish

certificate or abstract of title,' etc. Thus clearly and unambiguously an offer of the cash payment of $35,000.00 on the consummation of the sale, as called for by the agreement between Ramm and plaintiffs, was submitted by the Moores, and we are at a loss to understand why a contention that such offer was not submitted is here urged. Our conclusion, on this branch of the case, is that the offer submitted by the Moores to purchase the properties was in all respects in accord with the terms and conditions of the listing agreement, or, in other words, constituted a direct offer to purchase upon such terms and conditions.

[9] "Lastly, it is contended that the description of the real property as it is given in the listing contract or memorandum of agreement between plaintiffs and Ramm is so vague and ambiguous as to render uncertain the particular tract or tracts of land to which said agreement related. The answer to this contention is that which is given in each of the following comparatively recent cases dealing with a like contention: *Goodrich* v. *Turney*, 44 Cal. App. 516 [186 Pac. 806]; *California Packing Corp.* v. *Grove*, 51 Cal. App. 253 [196 Pac. 891]; *Tolosano* v. *Will*, 62 Cal. App. 622 [217 Pac. 803]. The cases of *Goodrich* v. *Turney* and *Tolosano* v. *Will* involved actions by brokers for the recovery of compensation for procuring purchasers of land owned by the defendants. The Packing Corporation case was an action to recover an amount alleged to be due from defendant for his failure to deliver certain fruit in pursuance of the terms of a written contract. In the case of *Turney* v. *Goodrich*, the description of the land proposed to be exchanged by defendant for land owned by another party was as follows: 'An undivided one-half interest in Lots 423 and 424 of Fairmead Colony Tract No. 3, in Madera County, as a tenant in common with his wife.' In *California Packing Corporation* v. *Grove* the description was: 'The following orchards and lands leased or owned by the seller in the County of . . . . , State of California, to-wit: Located ¾ miles southeast of Visalia. . . . . Acres, 10, Present age, 6, Varieties of fruit, Tuscan peaches. Acres, 10, Present age, 6, Varieties of fruit, Phillips peaches.' In the case of *Tolosano* v. *Will* the property was described, as is stated in the opinion, 'as 40 acres located 12 miles West of Fresno; also, that 26 acres of

said land are planted to Thompson grapes, four years old, and 4 acres to alfalfa; that there is situated upon the property a house of three rooms, a barn, a tank house, a windmill and an "electric plant." The number of sweat boxes, picking boxes, horses, farming tools and implements upon the premises were also stated.' These descriptions were held to be sufficient in written instruments involving transactions of the character of the one here or in executory contracts relating to the transfer of real property, and in none of them was the description of the real property more definite than that of the real property in the listing card in this case. Furthermore, it appears without contradiction in this case that one of the plaintiffs here, prior to the preparation of the listing card, or the signing of any agreement or authorization by Ramm, visited the premises in question and that the latter pointed out to him the precise real and personal property which he desired to put in the hands of plaintiffs to be sold. It further likewise appears that one of the Moores, before offering to purchase the properties, visited the premises and that Ramm not only showed him the real property which he had employed plaintiffs to secure a purchaser for, but also called his attention to the specific articles of personal property which were to be included in and go with the sale. It was not shown or pretended at the trial that Ramm owned any other real property situated one mile north of and from Dinuba. Moreover, the amended complaint, as we have seen, purports to describe the real property by township, range and sectional subdivision, and the same is admitted to be correct by the failure of the answer to controvert it either generally or specifically. From all these considerations it is clear that nobody connected with the transaction was at any time misled or under any misapprehension or uncertainty as to the particular properties referred to in the listing card. It is the settled rule in this state 'as to particularity of description required in executory contracts to convey is extremely liberal in favor of their sufficiency. The rule is that where the description, so far as it goes, is consistent, but does not appear to be complete, it may be completed by extrinsic parol evidence, provided a new description is not introduced into the body of the contract, and the complaint must contain the averments of such

200 Cal.—24

extrinsic matter as may be necessary to render the description complete.' (*Marriner* v. *Dennison,* 78 Cal. 202 [20 Pac. 386].)

"In *MacKnight, Adm., etc.,* v. *Davitt,* 37 Cal. App. 720 [174 Pac. 77], in which the action was by a broker to recover commissions for negotiating the sale of certain lands, it is said:

" 'Much greater liberality is allowed in construing and curing defective descriptions in brokers' contracts than in a deed of grant of land, for, so far as the statute of frauds is concerned, the terms of the employment are the essential part, and such contracts will not be declared void merely because of a defect, uncertainty or ambiguity in the description of the property to be sold or exchanged when such defect can be cured by the allegation or proof of extrinsic facts and circumstances.' (See *Maze* v. *Gordon,* 96 Cal. 61 [30 Pac. 962]; *Proulx* v. *Sacramento Valley etc. Co.,* 19 Cal. App. 529, 534 [126 Pac. 509].)

[10] "Some suggestion is made in the briefs as to the insufficiency of the written memorandum of agreement to meet the requirements of the statute of frauds in such cases. The reply to any such suggestion is that the statute of frauds is not set up by the defendant, the rule being that in order that the defendant in any case may avail himself of the benefit of said statute, where it does not appear from the face of the complaint that the statute has not been complied with, it is necessary that it should be pleaded and proved. Furthermore, in this case the execution of the written memorandum was not denied and was introduced in evidence without any attempt to impeach it upon any ground. (*Alaska Salmon Co.* v. *Standard Box Co.,* 158 Cal. 567 [112 Pac. 454]; *Broder* v. *Conklin,* 77 Cal. 330 [19 Pac. 513].)''

The judgment is affirmed.

Shenk, J., Seawell, J., Curtis, J., Preston, J., and Langdon, J., concurred.

WASTE, C. J.—I dissent. The respondents herein instituted this action in the superior court of Fresno County against Charles H. Ramm, deceased, to recover commissions in the sum of $3,250 alleged to have been earned by them as

real estate brokers. Trial was had before the court without a jury and judgment was entered in favor of said respondents as prayed for.

It appears that on January 5, 1920, the appellant's intestate authorized the respondents in writing to sell a tract of sixty acres of land situate in Tulare County, with the personal property thereon, for the sum of $120,000. Said written authorization provided that $35,000 of said purchase price was to be paid by the purchaser in cash and the remaining $85,000 was to be liquidated at the rate of $3,500 per annum with interest at six per cent. The commissions to be received by the respondents in the event a sale was consummated were also provided for in the authorization of sale.

On this appeal it is contended by the appellant, among other things, that the respondents failed to produce a purchaser or purchasers "ready, *able* and willing" to buy the property on the terms fixed by the owner. The respondents, on the other hand, urge that the purchasers procured by them were "ready, *able* and willing" to purchase the property on the terms specified but that the appellant's intestate refused to convey to said purchasers.

The rule is that to entitle a broker to commissions under a contract or written authorization of the character of that here involved and where, as here, no sale has been actually consummated, it is incumbent on him to prove that he found a purchaser or purchasers not only ready and willing but also *able* to buy the property on the terms prescribed by the owner. (*Merzoian* v. *Kludjian,* 183 Cal. 422 [191 Pac. 673]; *Mattingly* v. *Pennie,* 105 Cal. 514 [45 Am. St. Rep. 87, 39 Pac. 200]; *Tashjian* v. *Krikorian,* 55 Cal. App. 160 [202 Pac. 956].) It follows, therefore, that the respondents' right of recovery is dependent upon their having procured a purchaser *able* to buy the property on the terms fixed by the owner.

All of the evidence touching upon the financial ability of the purchasers found by the respondents was given by Fred W. Moore, who testified that he and his brother, H. H. Moore, had signed a written offer wherein and whereby they had agreed to purchase the tract of land then owned by appellant's intestate for the sum of $120,000, of which amount

$35,000 was to be paid in cash; that he had sufficient money in the bank against which a check for $1,000 given by him to the respondents as a deposit might be drawn; that he "was able to buy it and go through with all my obligations"; that he and his brother were "buying it together"; that they were able to pay for the property; that he, the witness, had "considerable" property. On cross-examination the witness testified that he and his brother were "able to raise" the $34,000 required to complete the initial cash payment; that they "had considerable of it in the bank"; that he had about $15,000 in the bank but that he did not know "what my brother had but we were able to take care of the deal"; that he would not be required to raise the $34,000 necessary to complete the initial cash payment as he "knew my brother would take care of half of it, his half of it"; that he did not intend or expect "to take care of more than half"; that they had "everything arranged to take care of the deal"; that he did not "remember" just how he was to raise the $2,500 needed to complete his half of the initial cash payment; that he was going to borrow said amount from "somebody" and give his note therefor; that he did not "remember just how he was figuring on raising it now."

The cases passing upon what constitutes ability to pay on the part of a proposed purchaser involve such a variety of circumstances that it is difficult to deduce any fixed rule from them. It is my opinion, however, that the evidence set forth in narrative form above is insufficient to support the findings and judgment in favor of respondents. In other words, the respondents have failed to satisfy the burden resting upon them of proving that they had produced a purchaser or purchasers having the *ability* to buy the property upon the terms fixed by the owner.

The evidence clearly establishes that the witness, Fred W. Moore, intended and expected only to furnish one-half of the purchase price of $120,000 and but one-half of the initial cash payment of $35,000. Assuming, without deciding, that the evidence sufficiently shows that said witness was financially able to care for and pay his one-half of the purchase price and initial cash payment, there still remains a hiatus in the chain of proof, for there is an utter lack of

evidence tending to show or establish ·that the witness' brother, H. H. Moore, was financially able to care for and discharge his one-half of the obligation in the event a sale was consummated.

The law will not presume the existence of the purchaser's financial ability; the burden is upon the broker to establish that fact. It is declared in *Merzoian* v. *Kludjian, supra,* that "it was a part of plaintiff's case in chief to show that the purchaser was ready, able and willing to make the purchase, and this could be done by proof either that he had funds in hand, in whole or in part, or that he *commanded* resources upon which he could obtain the requisite credit." (Italics added.) The statement of the witness, Fred W. Moore, that he and his brother "were able to take care of the deal" was but the expression of an opinion on the part of said witness, and is too indefinite and conjectural to satisfy the burden resting upon the respondents or to establish the *ability* of H. H. Moore to proceed with the consummation of the sale so far as he personally was concerned. As already indicated, there is an absence of evidence tending to show the financial ability of said H. H. Moore, for the witness, Fred W. Moore, stated he did not know the nature or extent of his brother's assets. The evidence adduced is also insufficient to establish the ability of the witness, Fred W. Moore, to care for and discharge the entire financial burden in the event a sale was consummated. His testimony merely reveals that he had approximately $15,000 on deposit in a bank and "considerable" property. As declared in *Merzoian* v. *Kludjian, supra,* "he did not state whether he could have borrowed money on that property" nor is his testimony "at all certain as to his available assets." The witness, in fact, testified that he did not "remember" how and where he was to secure the nominal sum of $2,500 needed to complete and discharge his one-half of the initial cash payment. This being so, it may not reasonably be inferred that he was in a position to pay the entire initial cash payment or to discharge the full purchase price in the event a sale was consummated. Moreover, his testimony to the effect that he would have borrowed said $2,500 from "somebody" lends no support to a supposition that he might have borrowed sufficient to discharge the entire initial payment in the

event of a sale, for the authorities in this state uniformly hold that a statement of the proposed purchaser evincing a confidence in his ability to borrow the money "from someone, without showing that there was anyone legally bound to loan him this money, is insufficient to establish his financial ability to make the purchase." (*Tashjian* v. *Kirkorian, supra*.)

The evidence in the instant case when considered in a light most favorable to the respondents is insufficient to establish that the purchasers produced by them were "ready, *able* and willing" to complete the sale.

Rehearing denied.

Waste, C. J., dissented.