[Civ. No. 19337.   Second Dist., Div. One.   May 7, 1953.]

KARL B. SCHURZ, Respondent, v. HAROLD GELBER, Appellant.

Jack J. Lande for Appellant.

Irwin M. Fulop and Berne Rolston for Respondent.

DORAN, J.—The present action was instituted by respondent, a licensed real estate broker, to recover commissions, alleging that appellant has repudiated a written agreement and had refused to consummate an exchange of real properties negotiated by the respondent broker.

The complaint alleges that on January 19, 1951, appellant Gelber, in writing, appointed respondent as agent for a period of two days to negotiate an exchange of properties between appellant and Mr. and Mrs. William C. Weifenbach; that on January 20, 1951, respondent secured from the Weifenbachs an acceptance of the proposed exchange agreement; that thereafter appellant repudiated the signed agreement and thus defeated respondent's right to commissions agreed to be paid by both parties, amounting to $3,750.

The exchange agreement provided that appellant's "Vacant Residential Lot" in Glenroy Knolls should be exchanged for the Weifenbachs' "Unfurnished Residence" at 1737 Mandeville Lane, in Los Angeles. Appellant therein agreed to deliver the vacant lot "free and clear," and the Weifenbachs agreed to deliver the residence property "subject to a mortgage of $20,000.00 and provided first party (appellant Gelber) deposits in escrow $50,000.00 cash which is payable to second party (Weifenbach) upon demand of escrow officer. As evidence of good faith first party (Gelber) deposits herewith

$5,000.00 with the Karl B. Schurz Company which will be placed in escrow upon the approval of this exchange agreement by the second party named herein (Weifenbach). Said $5,000.00 to be credited against the $50,000.00 cash consideration.''

Said agreement obligates Gelber to pay Schurz a commission of $750 ''to become due upon the execution of this agreement by all parties hereto.'' In accepting the agreement Mr. and Mrs. Weifenbach promise to pay Schurz a further commission of $3,000, which is likewise ''to become due upon the execution of this agreement by all parties hereto.'' Before execution of the written agreement the parties made certain changes in the original draft, for example, the total price was changed from $85,000 to $90,000 less the value of Gelber's lot, $15,000. ''Tacked down'' carpets and drapes were to be included.

On Monday, January 22, 1951, respondent went to the California Bank in Beverly Hills where escrow instructions were duly prepared and signed by Mr. and Mrs. Weifenbach, respondent broker depositing appellant's $5,000 check as provided in the exchange agreement. After the escrow had been opened, respondent called appellant who then stated that payment on the check had been stopped and that Gelber would not pay more than $85,000 for the property. On this same afternoon respondent sent appellant and the Weifenbachs photostatic copies of the exchange agreement by registered mail. Mr. and Mrs. Weifenbach did not cancel the escrow until February 28, 1951, some five weeks after appellant's repudiation and 20 days after the respondent had filed this action.

The trial court found that plaintiff broker had performed all the terms of the written agreement; that by reason of defendant's repudiation the exchange of properties was never consummated, which repudiation resulted in depriving plaintiff of the commission of $750 agreed to be paid by defendant and the further commission of $3,000 to be paid by the Weifenbachs, ''upon the execution of this agreement by all parties hereto.''

It was further held that the written exchange agreement constituted a sufficient memorandum to satisfy the statute of frauds, section 1624 of the Civil Code; that said agreement had not been mutually waived, abandoned or rescinded, as claimed by defendant; that the agreement had not been obtained by fraud or by plaintiff's representation

that the broker would obtain the consent of defendant's wife to the exchange, and that the execution of said agreement was not conditioned upon obtaining consent and approval of defendant's wife; that it was untrue that the agreement was without consideration. Judgment was therefore ordered in favor of respondent in the sum of $3,750 with interest and costs.

Appellant's brief devotes considerable space to "an analysis of the testimony to determine the credibility of the witnesses . . . to determine the true facts." It is contended that the trial court's judgment finds no support "either in law or fact." In this connection it must be pointed out that credibility of witnesses is a matter for the trial court to determine, and that as stated by respondent, "the power of an Appellate Court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will uphold a disputed finding." Applying this rule to the present case, it cannot be said that the findings and judgment are without substantial support in the record. Any further analysis of the evidence is unnecessary and improper.

It is argued in appellant's brief that the exchange agreement "was illegal, null and void" because of respondent's alleged failure to comply with section 10142 of the Business and Professions Code which provides that "When a licensee prepares or has prepared an agreement authorizing or employing such licensee to purchase or sell real estate for compensation or commission, such licensee shall deliver a copy of such agreement to the person signing same. Receipt for said copy may be made on the face of such agreement."

As found by the trial court, the exchange agreement was executed on Saturday afternoon, January 20, 1951, and on the afternoon of the next business day, Monday, January 22, 1951, respondent mailed to the parties photostatic copies of the agreement. It may be noted that the statute does not require delivery of a copy "forthwith," nor does it provide that the agreement shall be invalid if the broker fails to deliver such copy. It is not here claimed that there was a failure to make delivery of the copy, but merely that it should have been delivered on Saturday in place of the following Monday. Appellant's contention is without merit.

Appellant's contention that the trial court "erred as a matter of law in finding that there was a sufficient memo-

randum to satisfy the statute of frauds, section 1624 of the Civil Code, is likewise untenable. The agreement in question was written upon the Standard Form of Exchange Agreement prepared by the California Real Estate Association, and contained all the essential terms of the contract. Moreover, the present action is not between buyer and seller but is brought by respondent broker to recover commissions for services rendered, which commissions under the express language of the contract were "to become due upon the execution of this agreement by all parties hereto." Consummation of the exchange agreement by the parties thereto was not a condition precedent to recovery of the broker's commissions.

A similar exchange agreement was involved in *Rose* v. *Gardner*, 130 Cal.App. 302 [19 P.2d 1008], where the court held, in the language of the headnote, that "there was no merit in the contention that the contract of exchange was unenforceable and hence the agreement to pay a commission was without consideration, where (as here) . . . the defendant not only agreed to pay to plaintiff the commission on the execution of said exchange agreement, but also agreed that 'in the event any error cannot be corrected, this agreement shall be null and void, except as to payment of the commissions'."

The finding to the effect that appellant's execution of the agreement was not conditioned upon the respondent broker obtaining approval of appellant's wife, finds substantial support in testimony given by respondent Karl B. Schurz and saleslady Claire Baily that no such condition was mentioned at any time, notwithstanding appellant's claim that the contract was not binding because such condition had not been complied with. And, as said in *Russell* v. *Ramm*, 200 Cal. 348 [254 P. 532], and elsewhere, the wife's refusal to join in the agreement "does not in the least affect or impair the right of the plaintiffs to the compensation" which the husband had agreed to pay.

Nor is there merit in appellant's contention that the trial court should have found "that the alleged contract, Exhibit 2, had been waived, abandoned, and rescinded." The testimony of respondent Schurz was that there was no cancellation or abrogation, and under the well established rule that a reviewing court "will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact." (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]), the finding herein must be sustained.

No reversible error has been pointed out, and all material findings are supported by substantial evidence.

The judgment is affirmed and the attempted appeal from the order denying a new trial is dismissed.

White, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 2, 1953.