[Civ. No. 2030. Third Appellate District.—December 1, 1919.]

## V. D. GOODRICH, Respondent, v. M. TURNEY, Appellant.

[1] BROKER'S COMMISSIONS—OFFER TO EXCHANGE COMMUNITY PROPERTY—CONTRACT NOT SIGNED BY WIFE—RIGHT TO COMMISSIONS.— A broker who has secured an acceptance of an offer to make an exchange of real property is entitled to recover the agreed commission even though the property offered for exchange was community property and the agreement authorizing the exchange and to pay the commission was signed by the husband only.

[2] ID.—REFUSAL TO GO ON WITH TRADE—LIABILITY FOR COMMISSIONS. Where it is agreed that the broker is to be paid the stipulated compensation for his services when he has secured a particular agreement of exchange, his contract is fulfilled and his commission earned when he has secured that agreement, notwithstanding the arbitrary refusal of the person agreeing to pay the commission to go on with the trade.

[3] ID.—INSUFFICIENT DESCRIPTION OF PROPERTY IN AGREEMENT OF EXCHANGE—DEFECT CURED BY ACTUAL KNOWLEDGE.—In an action to recover a broker's commission for the exchange of real properties, the fact that the description of the property in the agreement of exchange was indefinite and uncertain would not relieve the defendant from liability where he and his wife viewed the property before accepting the offer to exchange, learned and knew generally of what the properties consisted and where they were situated, and the other parties to the exchange, upon accepting the offer to exchange, tendered their deeds to their properties, in which the same were fully described.

[4] ID.—MISDESCRIPTION OF PROPERTY IN BROKER'S CONTRACT—CORRECTION BY PAROL EVIDENCE.—In such an action by a broker for his commissions on a contract of employment to effect a sale or transfer or exchange of real property, it is proper to correct a misdescription in the contract of the land which he was authorized to sell or exchange by parol evidence.

[5] ID.—STATUTE OF FRAUDS — SIGNATURE OF CONTRACT BY BROKER UNNECESSARY.—The fact that the instrument authorizing the broker to effect an exchange of real property also contains the agreement to pay such broker for his services does not make it necessary that such instrument be signed by him. The statute of frauds only requires that such an agreement be signed by the party to be charged, or by his agent.

2. Right of broker to compensation where sale is defeated by act of owner, notes, 2 Ann. Cas. 184; 20 Ann. Cas. 1024; 43 L. R. A. 593.

APPEAL from a judgment of the Superior Court of Madera County. W. M. Conley, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. H. Larew for Appellant.

Sherwood Green and Fry & Jenkins for Respondent.

HART, J.—The action was brought to recover a broker's commission of five hundred dollars for the exchange of real properties. From a judgment in favor of plaintiff for that amount, defendant appeals.

Defendant and his wife were the owners, as tenants in common, of two lots, consisting of forty acres, in Fairmead Colony No. 3, in the county of Madera. About one year before the contract in suit was executed, defendant signed a "listing card," in which he authorized plaintiff to sell or trade his real and personal property (describing it) for the sum of ten thousand dollars, stating that he would trade for "small orchard about 10 a. about same price, or small acg. in town of San Jose." Some months later, one R. T. Padget listed with plaintiff for sale or trade certain property in the city of San Jose and six acres of country property, "for the sum of $15,000.00 or any other price that I may agree upon," and stating that he wanted a "valley ranch." On the real property of defendant there was a mortgage of three thousand dollars, while on Padget's property there was a mortgage of $4,250. Plaintiff called to defendant's attention the Padget property and drove him and his wife to San Jose to look at it. Defendant said he would trade if $1,250 of the Padget mortgage were paid, to make the equities, in his opinion, of equal value. Plaintiff thereupon filled in a blank form of contract, read it to defendant and his wife, and defendant signed it. Said contract read, in part, as follows: "This agreement entered into this 4th day of Jan. 1918, Witnesseth, that the undersigned, the owner of the first piece of property, situate, lying and being near Fairmead [describing the property as 'Lots No. 423 and 424 of the Fairmead Colony Tract'], now belonging to M. Turney, which the undersigned agree to exchange for the second piece of property [describing Padget's property], together with $1250.00 cash or bank mtg. on 1st described

property. The terms of such exchange are to be as follows: . . . The undersigned will execute and deliver a good and sufficient conveyance to the first described piece of property by grant, bargain and sale deed or contract to owner of second piece of property, subject to an incumbrance in the amount of $3,000.00,'' and also subject to certain road reservations, ''for a like conveyance of the second piece of property by the owner thereof, subject to an incumbrance in the amount of $3,000.00.'' Taxes on each piece of property were to be paid by the present owner and an abstract or certificate of title to be furnished by Turney. The San Joaquin Valley Land Company was authorized to act as Turney's agent, and in case it secured an acceptance of the exchange agreement within twenty days, Turney agreed to pay five per cent commission on the listed price of ten thousand dollars.

About one week after the execution of said agreement, Padget went to Madera and examined the Turney properties and thereafter executed to plaintiff an instrument, by the terms of which he accepted said agreement of exchange and agreed to furnish a deed or contract conveying title to his property to Turney. Both instruments contained a clause agreeing that plaintiff might act as agent for each of the parties.

Defendant furnished to plaintiff a certificate of title covering the former's property. Arrangements were made to have Turney execute a deed, and the abstracts and deeds of Padget were left with W. H. Larew, defendant's attorney. On January 25, 1918, Mr. Larew wrote to plaintiff, making certain suggestions about the Padget abstracts of title, and stating that he could not examine them and give a written opinion as to title in less than ten days. On January 30, 1918, Mr. Larew wrote to plaintiff: ''Mr. M. Turney of Fairmead requests me to write and say that he has decided to go no further with the proposed land trade.''

Defendant, in his answer, alleged that he was a married man; that he was the owner of an undivided one-half interest ''in Lots 423 and 424 of Fairmead Colony Tract No. 3, in Madera County, as a tenant in common with'' his wife, Lydia A. Turney; ''that the property described is community property; that it stood of record in the names of the defendant and L. A. Turney, his wife, at the time the

defendant signed. That there are eight Fairmead Colony tracts in Madera County, numbered from No. 1 to No. 8, inclusive; . . . that no sufficient description of any property is contained in the paper signed by defendant and alleged by the plaintiff to be an offer to R. T. Padget, and that the terms of the alleged offer are unintelligible.''

As a second defense, defendant alleged that he was induced to sign said contract through fraud and misrepresentation and that plaintiff plied him with liquor at the time he signed so that he was incompetent to transact business. Among the misrepresentations set forth were that plaintiff said that the Padget property was worth eleven thousand dollars, when in fact it was worth but seven thousand dollars, and was in the hands of another broker for sale for the last-named sum, and that the Padget land was subject to flood and overflow.

The court, upon sufficient evidence, found that the above affirmative allegations of the answer were untrue.

[1] Nothing could be clearer than that the plaintiff, having secured an acceptance of the offer of the defendant to make an exchange of his property for that of the Padgets, earned the commission which the defendant agreed to pay it for that service, and that it is entitled to be paid the same. But the defendant contends that the written offer is void under section 172a of the Civil Code [Stats. 1917, p. 829], because, the property which the defendant agreed to exchange for that of the Padgets being community property, it was necessary, to make the agreement valid, that the defendant's wife should also have signed said written offer. Said section provides, among other things, that ''the husband has the management and control of the community real property, but the wife must join with him in executing any instrument by which such community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered. . . . ''

It is doubtful whether the instrument by and in which the defendant offered to exchange his property comes within the language or purview of said section, since it does not involve a lease or a sale of the real property, but only an offer to exchange such property for other property; but, assuming that it does, that does not make the writing absolutely void, but voidable only at the instance of the wife. But, as far

as is concerned the right of the plaintiff to the stipulated compensation for securing an acceptance of the offer, it is wholly immaterial whether the property was or was not community, or, if community, whether the defendant's wife signed the written offer. Indeed, the defendant's title to the property might be so defective that he could not have given a clear title thereto if the exchange had been consummated, and still the plaintiff would be entitled to the commission agreed upon. There was no agreement between the plaintiff and the defendant that the plaintiff's right to the commissions was to depend upon whether the defendant could make a legal conveyance of his property to the Padgets or whether the title was good or defective, or whether the exchange was actually consummated. (See, in support of the foregoing views, *Martin* v. *Ede*, 103 Cal. 157, 160, [37 Pac. 199]; *Justy* v. *Ero*, 16 Cal. App. 519, 522, [17 Pac. 575]; *Jennings* v. *Jordan*, 31 Cal. App. 335, 337, [160 Pac. 576].)

[2] The further contention is made that, before a broker agreeing to secure for another an acceptance of an offer to exchange real estate is entitled to be paid for his services for effecting the exchange, he must procure in the acceptor a person ready, willing, and able to make the exchange. That is, of course, the general rule as to contracts with brokers when employed to sell real property for another; but in this case the agreement with the broker was that he would be paid the stipulated compensation for his services in securing a particular agreement—that is, an agreement from the Padgets that they would exchange particular property of theirs for that of the defendant. When, therefore, the plaintiff secured from the Padgets the agreement to make the exchange, its contract was fulfilled and it then had earned the commission which the defendant agreed to pay it for such service. (*Jauman* v. *McCusick*, 166 Cal. 517, 521–522, [137 Pac. 254].) Indeed, this in fact amounted to the procuring of a person ready, willing, and able to make the exchange upon the terms submitted by the defendant, he being perfectly willing at the time the agreement was secured to make the exchange. It is true that subsequently he informed plaintiff that he would not go any further with the negotiations, but he gave no reason for repudiating the agreement of acceptance by the Padgets—that is, he did

not state that the agreement was unsatisfactory for any reason or object to the title to Padget's property—and, of course, his mere refusal to go on with the trade, unaccompanied by objections which would justify him in such refusal, could not have the effect of relieving him of his obligation to pay the plaintiff for the services it had performed under its agreement with him.

[3] The further objection is made that the description in the written acceptance by the Padgets of defendant's offer is too indefinite and uncertain to indicate the particular property therein referred to. The point is without merit. The defendant and his wife visited and viewed the Padget properties before the latter accepted his offer to exchange, learned and knew generally of what the properties consisted and where they were situated. Moreover, the Padgets, upon accepting defendant's offer to exchange, tendered the latter their deeds to their properties, in which the same were fully described. It is obvious from all these facts that the defendant could not have been prejudiced by an erroneous description of the Padget properties in the written acceptance of his offer. [4] In a case of this character, where a broker is suing for his commissions on a contract of employment to effect a sale or exchange of real property, it would be proper, as was done here, to correct a misdescription in such contract of the land which he is authorized to sell or exchange by parol evidence. As is said in *MacKnight, Admr., etc.* v. *Davitt,* 37 Cal. App. 720, [174 Pac. 77]: "Much greater liberality is allowed in construing and curing defective descriptions in brokers' contracts than in a deed of grant of land, for, so far as the statute of frauds is concerned, the terms of the employment are the essential part, and such contracts will not be declared void merely because of a defect, uncertainty or ambiguity in the description of the property to be sold or exchanged when such defect can be cured by the allegation or proof of extrinsic facts and circumstances." (See *Maze* v. *Gordon,* 96 Cal. 61, [30 Pac. 962]; *Proulx* v. *Sacramento Val. etc. Co.,* 19 Cal. App. 529, 534, [126 Pac. 509].) The description objected to here is as follows: "6 A. Cor. 24th St. and Story rd. House and lot 173 Empire St. Lots 69x137½ ft. on 4th just off Empire." Immediately preceding this description in the written acceptance by the Padgets it is stated that the properties so

described are situated "near and in San Jose, County of Santa Clara, Cal." It was not objected at the trial in the court below that there was a misdescription of the properties, nor was there any claim made by the defendant at the trial that he did not know what properties were meant or referred to by said description. Indeed, the point as to the description of the Padget properties is made for the first time on this appeal.

[5] The defendant further claims that, to satisfy the statute of frauds, it was necessary that plaintiff should have signed defendant's written offer of exchange with Padget, inasmuch as said instrument contained also the agreement to pay the plaintiff for its services in negotiating the exchange. There is no force to this point. The essential object of the instrument, in so far as it gave plaintiff the right to negotiate an exchange of defendant's property for the Padget's properties, was to evidence, as the statute requires, the authority of plaintiff to act in the premises, and to bind the defendant to the extent only that the defendant desired and intended to be bound by the plaintiff in the transaction, and to prevent the exercise of any power which would result in a fraud upon him. It is therefore, only necessary when giving another the authority to sell or exchange real estate that the writing vesting such authority should be signed or subscribed by the party by whom such authority is given. He is the source from which such authority is derived, and the subscription of his name to the writing giving it is all that is or should be required, and our statute of frauds so declares. (Civ. Code, sec. 1624, subd. 6; Code Civ. Proc., sec. 1973, subd. 6.) It provides that "an agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission" is invalid, "unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, or by his agent." The writing involved here is subscribed by "the party to be charged," and, therefore, fully satisfies the statute. (*Cavanaugh* v. *Casselman,* 88 Cal. 543, 548, 549, [26 Pac. 515]; *Vassault* v. *Edwards,* 43 Cal. 458; *Worrall* v. *Munn,* 5 N. Y. 246, [55 Am. Dec. 330]; *Justice* v. *Lang,* 42 N. Y. 493, [1 Am. Rep. 576].) In *Toomy* v. *Dunphy,* 86 Cal. 639, [25 Pac. 130], the following writing, signed by the defendant, was held sufficient to meet the requirement

of the statute: "Henry Toomy can arrange for the sale of my ranch in Nevada, as per written memorandum."

There are some other points of minor importance advanced by the appellant, but they are so wanting in merit that it is not deemed necessary to notice them herein.

The appeal is wholly without a meritorious foundation for its support. The judgment is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 29, 1920.

All the Justices concurred, except Kerrigan, J., *pro tem.*, who was absent.