[Civ. No. 2463.  Third Appellate District.—September 29, 1922.]

## G. E. PRYOR, Respondent, v. M. McGUIRE, Appellant.

[1] BROKER'S COMMISSIONS—PRODUCTION OF PURCHASER—REPOSSESSION OF BROKER'S CONTRACT—FINDINGS—EVIDENCE.—In this action to recover a broker's commission, the findings that the plaintiff produced a purchaser ready, willing, and able to buy and that defendant obtained a redelivery to him of the broker's contract by fraud are supported by the evidence.

[2] ID.—PROCURING CAUSE OF SALE—SUFFICIENCY OF EVIDENCE.—Where the seller and the buyer were for the first time brought together by the broker, and the sale was subsequently consummated by such parties, independently of the broker, and the broker had not abandoned his agency and the agency had not been revoked, the broker was the procuring cause of the sale.

[3] ID.—PRODUCTION OF PURCHASER—SUBSEQUENT EXECUTION OF BROKER'S CONTRACT—EFFECT OF.—Where the broker's contract was executed after the broker produced the purchaser, but on the same day

---

2. When real estate broker is considered as procuring cause of sale, notes, 139 Am. St. Rep. 256; 44 L. R. A. 521.

3. Necessity that agent's authority to purchase or sell real property be in writing to enable him to recover compensation for his services, notes, 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133; 44 L. R. A. 601; 9 L. R. A. (N. S.) 933.

of such production, it cannot be successfully contended that the contract was not enforceable for the reason that it was not previously executed, since the writing is not the contract, but only evidence of it.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmett Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. F. Cowan for Appellant.

Fred W. McConnell for Respondent.

ANDERSON, J., *pro tem.*—Plaintiff brought the action to recover a commission as broker for the sale of defendant's land. The case was tried by the court without a jury, and plaintiff had judgment, from which defendant appeals.

The trial court found that "on or about the 3rd day of March, 1921, the Defendant by the written agreement hereinafter referred to, employed the Plaintiff to find a purchaser for, and to sell for the Defendant, certain real property, described as follows: Ten acres of land adjoining the 'Chisholm Ranch' near Windsor in Sonoma County, California, which said real property was at that time in the possession of Defendant, and agreed to pay plaintiff for his services, and as his compensation for finding a purchaser for said land, and making a sale thereof, a commission of five per cent for the purchase price accepted by the defendant for said real property from a purchaser found by said Plaintiff."

The contract which was offered by plaintiff to support such finding was as follows:

"We, the undersigned, hereby authorize G. E. Pryor, real estate agent, to sell the following described property located in the County of Sonoma, State of California, and described as follows, to-wit: 10 acres of land adjoining the Chisholm Ranch near Windsor. (List of Personal Property.) We agree to pay to the said agent $1,000.00 of the purchase price which is $10,000 or any other amount we may agree to take when the property is sold or a purchaser is found by the said agent. In case the place is

sold for less than $10,000.00 the commission is to be 5 per cent.

"(Signed) M. McGUIRE."

The proof of the foregoing contract was established by parol evidence, the original contract having been lost, it having been returned to the defendant (seller) and he failing to produce the same at the trial when called for. This situation produced a conflict in the evidence as to the exact wording of the contract, but the trial court sustained the plaintiff's contention as to the correct wording of the contract.

A question of fraud was also injected into the case by reason of the return of the contract by the broker to the seller, the ·contention of the plaintiff (broker) being that the contract was returned solely by reason of the fraud and misrepresentation of the defendant. Upon this question the trial court also upheld the contention of the plaintiff (broker).

Appellant also raises some other points, one of which is, granting that the broker produced a purchaser ready, willing, and able to purchase, yet he claims no liability attached against the seller for the reason that said purchaser was produced before the written contract was executed.

It was also contended that no liability attached for the reason that the sale was consummated between the buyer and the seller without the aid of the broker.

We will first address ourselves to the findings of the court:

1. That the broker produced a purchaser able, ready, and willing, and who in fact did purchase the property described in the contract.

2. That the defendant practiced fraud and made false representations for the purpose of obtaining possession of the written contract theretofore executed and delivered to plaintiff.

[1] As to these two essential findings we may say admittedly that there is a substantial conflict in the evidence, and this being so, the question as a matter of law is removed from the consideration of the appellate court; but in order to ascertain this fact we have read the record, and we are constrained to say that a careful reading of the entire evidence convinces us that the trial court was well

justified in making such findings. A comparison of the deposition of the defendant with his testimony given at the trial could not impress one with his frankness—there are evasions and contradictions which the trial court could not overlook.

The learned counsel for appellant earnestly contends that the trial court should have followed the version of the defendant as to the terms contained in the contract, but it must be borne in mind that the original contract was last known to be in the possession of the defendant and that it was taken from the possession of the plaintiff by the defendant, as the court found, through fraud; and the defendant's explanation of his failure to produce it at the trial could not be said to be entirely satisfactory, and moreover, if the written contract contained the clause which defendant claimed it did contain, there was no reason for the diligence exercised by the defendant in taking the contract out of the hands of the plaintiff.

If it contained the clause as claimed by the defendant, to the effect that plaintiff was to receive no commission whatsoever if the price obtained for the place did not exceed $9,000, then its very presentation would have defeated plaintiff's action. Why should defendant fear it, it being his very weapon of defense, as he claimed? According to defendant's version, for the plaintiff to present the written contract would mean his defeat in the action, and the trial court had a right to draw all reasonable inference from the fact that the defendant did not present the contract.

[2] Appellant makes a further attack upon the judgment for the reason, as he claims, that the broker did not consummate the sale, but that the sale was finally accomplished through the defendant's efforts. We do not deem it necessary to enter upon a recital of the evidence to show that there is sufficient evidence in the record to support the finding of the court that the plaintiff was the procuring cause of the sale, but it is sufficient to state that we are satisfied that the record contains sufficient evidence for such purpose.

Anyone conversant with the history of real estate transactions will hardly venture to say which agent displays the greater wisdom, the one who talks much or the one who

talks little; which would be the better course to pursue in each particular case becomes a matter of judgment to be exercised by the agent, and whether his judgment has been good or bad can only be determined by results, so if the sale is made, as it was in this case, this may be said to be proof of good judgment.

It may be that the purchaser would prefer to make his inquiries directly of the seller after having been introduced to the seller by the agent, and the agent after talking with the parties, or through any other information he might obtain, may come to the conclusion that it would be better for the owner of the property to do the talking. These are matters of policy, with which the court has nothing to do. The only inquiry we are called upon to make is, Did the agent perform some valuable service—did he substantially assist in bringing about the object sought to be attained? To determine this we turn to the record and find that the contract was signed by the defendant, and the purchaser was produced on defendant's ranch by the plaintiff on the third day of March, the same day on which the contract was made. On the seventeenth day of the same month the defendant procured a return of the contract from the plaintiff, and on the twenty-third day of the same month the sale was consummated.

Considering the short space of time that elapsed between the time of the introduction of the purchaser and the consummation of the sale of the property, we find no cause to complain of lack of diligence on the part of the agent. There is some evidence that between the third day of March and the seventeenth day of the same month, the broker and purchaser discussed the prospective sale; and certainly no complaint can be made of the broker if he became inactive on and after the 17th of the month, in view of the misleading conduct of the defendant.

As to the claim that the property was finally sold through the efforts of the seller and buyer alone, we must keep in view the fact that such efforts were made with full knowledge on the part of both seller and buyer of the agency of the broker.

This court, speaking through Chipman, P. J., in the case of *Hill* v. *McCoy*, 1 Cal. App., at page 166 [81 Pac. 1018], say: "There is always a possibility that had the broker not

brought the seller and buyer together, some other broker might have done so, or the parties might have met by chance and through no agency of any broker, and hence it might be said the employed broker was not the procuring cause of the sale. But where it appears, as here, that the seller and buyer were for the first time brought together by the broker duly authorized to act for the seller, and the sale was subsequently consummated by the same seller and buyer, acting independently of the broker, the broker not having abandoned his agency, and the seller not having revoked the broker's authorization or done any act from which a revocation may be implied, we think the inference is a reasonable one, and may be drawn by the jury, that a sale under such circumstances is effected through the broker's agency as its procuring cause. Especially may this inference be drawn where both seller and buyer have negotiated with knowledge of the broker's previous employment.''

There are many cases supporting the doctrine announced in this case, some of which are *Roth* v. *Thomson,* 40 Cal. App. 208 [180 Pac. 656]; *Phelps* v. *Prusch,* 83 Cal. 627 [23 Pac. 1111]; *Dolan* v. *Scanlan,* 57 Cal. 261; *Justy* v. *Erro,* 16 Cal. App. 519 [117 Pac. 575]; *Shepherd-Teague Co.* v. *Herman,* 12 Cal. App. 394 [107 Pac. 622]; *Briggs* v. *Hall,* 24 Cal. App. 586 [141 Pac. 1067].

[3] Appellant also contends that the contract is not enforceable for the reason it was not executed until after the plaintiff produced the purchaser. It appears from the record that plaintiff came to the ranch of defendant in company with the purchaser in the forenoon of March 3d, and that late in the afternoon of the same day defendant executed the contract in question.

This question involves the consideration of the purposes for which the statute of frauds was enacted.

Mr. Justice Hart exhaustively reviews the authorities in the case of *In re Balfour & Garrette,* 14 Cal. App. 261 [111 Pac. 615], and clearly points out that the better reason and great weight of authority treats the statute of frauds as a means merely of compelling the authenticating of evidence, to the end that certainty may be more readily attained and the door to perjury and misunderstanding closed. The statute is always satisfied when these purposes

are subserved. The history of the English statute and the reasons for its enactment fully support this view and explain the reason for the rule.

The following language contained in a decision from the supreme court of the state of Maine, and quoted approvingly by the court in *In re Balfour & Garrette, supra,* tersely and clearly states the construction to be placed upon the statute of this state: ''In other words, is the writing the contract, or only evidence of it? We incline to the latter view.''

The judgment is affirmed.

Burnett, J., and Finch, P. J., concurred.