[Civ. No. 5366. Second Appellate District, Division One.—May 23, 1928.]

W. M. AVIS et al., Appellants, v. J. G. REBHAN et al., Respondents.

Allard & Mitchell for Appellants.

Frank T. Bates and Walter E. Byrne for Respondents.

WOOD (W. J.), J., *pro tem.*—Plaintiffs commenced the action to recover the sum of $1,075 alleged to have been earned as brokers' commission in the sale of defendants' ranch and certain personal property thereon. The appeal is prosecuted from a judgment in favor of defendants. On August 17, 1923, defendant J. C. Rebhan and Jennie L. Wagner met, through the instrumentality of plaintiffs, at defendants' ranch and signed the following memorandum agreement for the purchase and sale of the property:

"Pomona, Calif., Aug. 17, 1923.

"Received from Jennie L. Wagner $500.00 on account of a total purchase price $33,000. for the 30½ acre ranche of J. G. Rebhan, bounded on the N. by S. P. R. R., on the East by Romona Ave., on the South by Chino Ave., with all

stock, tools and equipment except team of horses and ¼ interest in the well, the buyer to assume a Government first mortgage of $8000.00 and a second mortgage of four thousand dollars. To pay $2500.00 cash on or before Septe. 20, 1923, and $500.00 or more monthly thereafter with interest on the deferred payments quarterly at 7%. All parties hereto agree to the above, also to enter into escrow at the bank Monday Aug. 20th where more details of the above will be entered into. Insurance to be prorated as of Sept. 20–2—21 milk cows and a bull go.

"J. G. REBHAN,
"JENNIE L. WAGNER."

At the time the memorandum agreement was signed Mrs. Wagner paid $500 on account of the purchase price. On August 20th plaintiff W. M. Avis, Mrs. Wagner and the defendants met at the First National Bank at Ontario and there a contract for the purchase and sale of the property was prepared by an officer of the bank and signed by Mr. and Mrs. Rebhan as sellers and Mrs. Wagner as purchaser. By the terms of this contract the purchaser was to pay $2,-500 by September 20, 1923, and $500 each month thereafter until the entire purchase price should be paid. The sum of $500, which had been paid by Mrs. Wagner, was by consent of all parties turned over by Mr. Avis to Mr. Rebhan. The contract itself, which was not signed in duplicate, was left with the bank. The defendants also left with the bank a bill of sale covering the personal property and a letter instructing the bank to pay to plaintiffs the sum of $1,075 out of the payment of $2,500 which Mrs. Wagner was to make on September 20th. A few days later Mr. and Mrs. Wagner wished to make certain changes in the contract and accordingly they met the defendants at the bank and attached a rider to the original agreement embodying the changes agreed upon. On September 19, 1923, the Wagners informed defendants that they would not for financial reasons be able to comply with the terms of the contract and Mr. Rebhan then told the Wagners to "let it drop." On October 4, 1923, Mrs. Wagner and Mr. Rebhan met at the bank and an officer of the bank, with the consent of Mrs. Wagner, delivered the contract to Mr. Rebhan, who retained the sum of $500, the original payment made by Mrs. Wagner.

█ The trial court found, among other things, that the agreement by which plaintiffs were authorized to sell defendants' property is invalid for lack of a sufficient description of the property involved, holding that plaintiffs are prevented from recovering by the provisions of subdivision 6 of section 1624 of the Civil Code. On one side of the listing card the defendant J. G. Rebhan signed an agreement to pay commission for the sale of "the property herein described." On the other side of the card the following appears:

"Name J. G. Rebhan, Dairy Price $40,000
Mort. 12,000
Residence, Chino R. D. #3 Phone 6146
Location, Bet. Riverside and Chino on Ramona
Imp. 6 rooms, 1 bath, 1 garage, electricity & Gas.
40 acres, 30 a. Walnuts 11–a–8 yr old 20 A. set last
year 10A.—5 A. Alfalfa, 5 A. Farmed.
Water, owns pump about 90 electric motor all piped for
irrigation.
20 hd. cows, barn full hay goes, milk now 7.00 Mo.
Terms 20,000. Mortgage 8000 federal loan, 5½%—4000
second 7% due 1925, 17 years.
Exchange for Calif. clear or about clear.
Remarks: S-9 A. Wal. 6000, W—10-a 7000."

It was shown by the evidence that defendants resided on the property which was the subject of the contract between defendants and the Wagners. Upon being asked where the memorandum agreement was signed defendant J. G. Rebhan answered: "Down at my ranch where I was living at the time." In their answer defendants allege that they own the property described in the complaint and that they employed plaintiffs to sell it. Plaintiff Avis testified that the words "Riverside," "Chino" and "Ramona" are the names of streets. This evidence was proper under the circumstances, although it was on motion of defendants stricken out by the court as being a voluntary statement by the witness. Defendant J. G. Rebhan was asked by counsel for plaintiffs if the property listed consisted of the ranch on which he lived at Chino and if he owned any other property in the vicinity of Chino. Objections to these questions were erroneously sustained by the trial court. In an action to recover a broker's commission parol evidence is in some

instances admissible to cure a defective description. Plaintiffs should have been allowed to prove that defendants did not own any land in the vicinity of Chino other than that on which they resided. However, we are of the opinion that, notwithstanding the court struck out the testimony, there is enough in the record to show that the description in the listing is sufficient to comply with the provisions of the statute of frauds. In *Macknight* v. *Davitt*, 37 Cal. App. 720 [174 Pac. 77], the court said: "Much greater liberality is allowed in construing and curing defective descriptions in broker's contracts than in a deed of grant of land, for, so far as the statute of frauds is concerned, the terms of the employment are the essential part, and such contracts will not be declared void merely because of a defect, uncertainty, or ambiguity in the description of the property to be sold or exchanged when such defect can be cured by the allegation or proof of extrinsic facts and circumstances." In *Cowing* v. *Wofford*, 68 Cal. App. 538 [229 Pac. 883], plaintiff sought to recover a broker's commission. The court said: "In *Maze* v. *Gordon*, 96 Cal. 61 [30 Pac. 962], *supra*, the rule is laid down that a contract to employ a broker need not describe the lands specifically if the terms of employment can be made definite without it, and if the circumstances surrounding the transaction disclose that one owns property of similar dimensions to that insufficiently described, it is enough for a contract of this character. The office of a description is not solely to identify the land but also to furnish a means of identification." (See, also, *Anderson* v. *Wilstrup*, 34 Cal. App. 771 [168 Pac. 1150]; *Tolosano* v. *Will*, 62 Cal. App. 622 [217 Pac. 803].) The terms of the employment of plaintiffs, the "essential part" of the written authorization, are clearly set forth in the case before us. It is readily disclosed from the listing that the property involved is a 40-acre dairy ranch on which is the residence of J. G. Rebhan; that the postal address of said residence is "Chino R. D. #3"; that the property is located on Ramona Street; that there is a six-room house with garage thereon; and that the place is planted to walnuts and alfalfa. This description is sufficient to identify the property in an action of this kind, even without the testimony of plaintiff that "Riverside" and "Chino" are the names of streets.

Defendant Nellie I. Rebhan did not sign the listing card. No evidence is in the record showing that, as to her, there was a compliance with subdivision 6 of section 1624 of the Civil Code.

Plaintiffs contend that they produced a purchaser with whom defendants made a binding contract for the sale of the property. The trial court made the following finding: ". . . that said instrument of sale and purchase signed (on Aug. 20th) by and between said Jennie L. Wagner and said defendants; to-wit, 'Exhibit B,' was never completely executed by the parties thereto, in that there was never any delivery thereof, for the reason that the same was only deposited in the Bank of *Onario,* California, and held for the benefit of said defendants, and for their convenience only, and that the understanding and agreement of the parties to said instrument at the time of the signing thereof, and at all times, was that the same was not to be delivered to said purchaser or be effective for any purpose until the payment of $2500.00 was made to or for defendants as provided in said instrument." This finding is supported by the evidence. Defendant J. G. Rebhan testified that "the contract was to be left there (at the bank) until the next payment was made, and then it was to be turned over to Mrs. Wagner." The witness further testified that he did not at any time direct or authorize the delivery of the contract to Mrs. Wagner. Mrs. Wagner testified that "the contract was to be left with the bank until the $2500 was paid." The president of the bank testified: "They deposited, the contract with us for collection." The document signed by the parties was never in the possession of Mrs. Wagner. The finding of the trial court that there was no delivery of the instrument, being sustained by the evidence, is binding upon the appellate court.

A different situation is presented by the instrument signed by defendant J. G. Rebhan and Mrs. Wagner on August 17th at the ranch. This instrument contains the elements necessary to constitute a binding contract for the sale and purchase of the property. The terms are clearly stated and the property sufficiently described. Manual delivery of the document to either party was not necessary. In *Oneto* v. *Restano,* 89 Cal. 63 [26 Pac. 788], it is said: "In regard to a lease, the mere fact that the instrument

has always been in the possession of the lessor is not conclusive evidence that it has not been delivered so as to become operative. An ordinary deed is usually of value only to the grantee. The maker has no further interest in it. But an indenture of lease is a very different thing. It continues to be of fully as much interest to the landlord as to the tenant and he has fully as much occasion for its possession. Such agreements are usually executed in duplicate. But where it is retained by either party with consent of the other, it must be considered as delivered, if both understand that it has been executed and is in operation."

The pleadings and the findings are silent on the question of the delivery of this instrument. No evidence was offered to show who retained possession of the instrument after it was signed; nor was evidence offered to show whether the parties left it with anyone with the understanding that it was binding and in effect. A new trial will be necessary to enable the trial court to make findings on the question presented by the agreement of August 17th, upon the evidence to be presented and upon such amended pleadings, if any, as the parties may care to file in accordance with the views herein expressed. If it should be found that Mr. Rebhan and Mrs. Wagner signed the instrument of August 17th with the understanding that it was in effect as a binding agreement, it would follow as a matter of law that plaintiffs are entitled to their commission under the theory that they procured a purchaser who was accepted by defendant J. G. Rebhan and who entered into a valid contract with him. In such a case plaintiffs are not deprived of their right to demand their commission by the subsequent failure or inability of the purchaser to comply with the terms of the contract or by the voluntary release of the purchaser by the seller. A good statement of the rule applicable to the case is found in 4 Ruling Case Law, 309: "Once the customer procured by the broker is accepted by the employer, the latter is thereafter estopped from denying the purchaser's ability or willingness to complete the contract, inasmuch as he is not bound to accept the offer as such person without a reasonable opportunity to inquire and satisfy himself in relation to it. Consequently his acceptance should estop him from alleging anything against the claim except fraud on the part of the broker in inducing the acceptance."

This statement has been approved in a number of cases in our jurisdiction, among them being *Carrington* v. *Smithers,* 26 Cal. App. 460 [147 Pac. 225], and *Wood & Tatum Co.* v. *Basler,* 37 Cal. App. 381 [173 Pac. 1109].

The trial court made the following finding: "That at the time the terms of the instrument marked 'Exhibit B' to the second amended complaint were agreed upon and said instrument was signed by the parties thereto, it was then agreed upon between the plaintiffs and defendants that the plaintiffs were to be paid a commission on account of the transaction only when said instrument so signed became a valid and binding and enforceable contract upon the parties thereto when and upon the first payment of $2500.00 therein specified was made and not otherwise." No evidence whatever appears in the record to sustain this finding.

In so far as the judgment of the trial court affects defendant J. G. Rebhan only, it is reversed. The judgment is affirmed as to defendant Nellie I. Rebhan.

Houser, Acting P. J., and York, J., concurred.