[Civ. No. 6522. First Appellate District, Division One.—February 15, 1929.]

ANNA D. PRAY et al., Respondents, v. EARLE C. ANTHONY, Appellant.

Samuel M. Samter for Appellant.

Rufus H. Kimball and Ross & Ross for Respondents.

KNIGHT, J.—An action to recover real estate commissions alleged to have been earned by the plaintiff Mrs. Pray in procuring a buyer for defendant's property. Upon trial before a jury a verdict was rendered in plaintiffs' favor for the amount claimed to be due. Judgment was entered accordingly and defendant took two appeals: one from the judgment and the other from an order denying his motion for judgment in his favor notwithstanding the verdict. Summarized, defendant's grounds of appeal are that the evidence is insufficient in fact and in law to sustain the verdict or the judgment, and that the trial court erred in ruling upon the admissibility of evidence and in refusing to give certain instructions proposed by defendant.

The complaint alleged that defendant entered into a written contract with Mrs. Pray whereby he agreed that if she would produce a purchaser for the house belonging to defendant in Hillsborough, San Mateo County, California, he would pay her a commission of five per cent upon completion of the sale; that in pursuance of such contract she produced as purchasers Henry Duffy and wife, to whom defendant subsequently sold and conveyed the property, but that thereafter he refused to pay her the agreed commission.

The substance of the evidence supporting the foregoing allegations is as follows: Mrs. Pray had been engaged in the real estate business in Burlingame for a number of years and through her agency defendant acquired the property in question, which he occupied as a home until he moved to Los Angeles. Thereafter the house remained vacant for a long time, and eventually, in 1920, he requested Mrs. Pray to find a buyer for it. In furtherance of such request he addressed a communication to her reading, in part, as follows:

"San Francisco, California, October 28th, 1920.
"Mrs. Pray,
"Burlingame, California.
"My dear Mrs. Pray: If you will produce a customer for my house, who will purchase the house on terms satisfactory to me and at a price satisfactory to me, upon completion of the transaction, provided I complete the transaction, will pay you a commission of 5 per cent. . . .
"(Signed) EARLE C. ANTHONY."

Thereafter Mrs. Pray made a number of efforts to interest prospective buyers in the place, but no definite price had been fixed, and in 1924 further correspondence was had between defendant and Mrs. Pray as to the price and also with reference to the different articles of household furnishings which would or would not be included in the sale. Part of the correspondence consisted of a telegram reading as follows:

"Los Angeles, Calif.
"Price of house $60,000 net to me unfurnished but including all draperies, carpets, linoleum, wall coverings excepting oriental rugs in studio and passage from studio and dining room.
"(Signed) EARLE C. ANTHONY."

In 1925 defendant was traveling in Europe, but had directed his office manager in San Francisco, named Sahland, to act for him during his absence in the matter of the disposal of his house. During the month of August of that year Mrs. Duffy called at Mrs. Pray's office with a view to purchasing a home in that vicinity. She was accompanied by mutual friends, who had recommended Mrs. Pray's agency. Mrs. Pray immediately proposed the Anthony home and drove with Mrs. Duffy to visit the premises. She

pointed out certain attractive features of the property she thought would appeal to Mrs. Duffy and also designated the numerous articles of household furnishings to be included in the sale. Mrs. Duffy, after expressing herself as being much pleased with the property, said that she would like to have her husband look it over, but stated that he would likely insist on carrying on the negotiations for its purchase directly with the owner. Mrs. Pray replied that such arrangement would be entirely satisfactory to her, but she explained that Mr. Anthony was then in Europe and suggested that the matter be taken up with Mr. Sahland; and before leaving the premises that day Mrs. Pray instructed the caretaker, in Mrs. Duffy's presence, to allow the latter and her husband to inspect the same whenever they called. The next morning Mrs. Pray phoned Sahland's office to tell him of the prospective sale to the Duffys, and shortly afterwards Sahland phoned Mrs. Pray's office to the effect that he would do whatever he could to help Mrs. Pray consummate such sale. Thereafter Mrs. Duffy visited the property several times, and occasionally was accompanied by her husband. On one of these visits, when Mr. Duffy was present, they were shown about the property by a Mrs. Hart, an employee in Mrs. Pray's office, and on another occasion Sahland was there, and the Duffys explained to him that they were there through the agency of Mrs. Pray. About this time the negotiations were suspended for several weeks due to the fact that the Duffys were traveling. However, on October 8, 1925, Mrs. Pray mailed a letter to defendant at his San Francisco office, confirming her previous reports to Sahland regarding the negotiations carried on by her with the Duffys, and in this regard she stated: "I am waiting for them to return now and hope to sell your property in Hillsborough to them as soon as I can." On October 14th she received a reply, written by Sahland on defendant's business stationery, acknowledging receipt of Mrs. Pray's letter and stating: "I note what you say about Mr. and Mrs. Duffy, and as I told you before I am sure they can be sold the Anthony Hillsborough property. I also understand that they have returned from the east. I am leaving this matter to you for the time being and sincerely hope that you will be able to close them." A number of discussions took place thereafter between Mrs. Pray and Sahland about

the prospective sale, particularly as to a reduction in the price of the property, and the information Mrs. Pray received was imparted by her to Mrs. Duffy. Finally, Sahland told Mrs. Pray that they had gone as far as they could with the proposed sale in the absence of Mr. Anthony, and that immediately upon the latter's return from abroad they would communicate with her. Instead of doing so, however, and in November, 1925, Anthony and Sahland completed the sale with the Duffys and in consummation thereof Anthony executed a deed conveying the property to them for a consideration of $52,000; and, as stated, thereafter he refused to pay Mrs. Pray the agreed commission.

At the trial defendant objected to the introduction in evidence of the written authorization above mentioned, claiming that it was void under the statute of frauds (subd. 6, sec. 1624, Civ. Code), in that it contained no description of the property, particularly as to the city, county, or state wherein it was situate. The trial court ruled adversely, however, holding in effect that the authorization furnished sufficient means for identifying the property referred to therein, and therefore allowed plaintiffs to introduce evidence for such purpose, which consisted in part of testimony to the effect that at the time the authorization was signed defendant owned no other house in California than the one described in the complaint, namely, the one belonging to him in Hillsborough, San Mateo County, California. We find no error in the ruling.

As uniformly held by numerous decisions in this state upon the subject, the essential part of a contract to employ a real estate broker, so far as the statute of frauds is concerned, is the matter of the employment and consequently need not describe the land specifically, if the terms of the employment can be made definite without it. The description of the land and its identity are only incidental to the main purposes of the contract, and since contracts of that nature do not purport to involve the title or right of possession of land, much greater liberality is allowed in construing and curing defective descriptions therein than in cases of executory contracts to convey land or in deeds of grant, for, as stated, so far as the statute of frauds is concerned, the terms of the employment are the essential parts. The well-established rule is, therefore, that

broker's contracts are not to be declared void merely because of a defect, uncertainty, or ambiguity in the description of the property to be sold, when such defect can be cured by allegations and proof of extrinsic facts or circumstances. (*Sanchez* v. *Yorba*, 8 Cal. App. 490 [97 Pac. 205]; *Maze* v. *Gordon*, 96 Cal. 61 [30 Pac. 962]; *Toomy* v. *Dunphy*, 86 Cal. 639 [25 Pac. 130]; *Goodrich* v. *Turney*, 44 Cal. App. 516 [186 Pac. 806]; *Tolosano* v. *Will*, 62 Cal. App. 622 [217 Pac. 803]; *Anderson* v. *Wilstrup*, 34 Cal. App. 771 [168 Pac. 1150]; *Cowing* v. *Wofford*, 68 Cal. App. 538 [229 Pac. 883]; *Russell* v. *Ramm*, 200 Cal. 348 [254 Pac. 532]; *Avis* v. *Rebhan*, 92 Cal. App. 178 [267 Pac. 898].) Says the court in *Anderson* v. *Wilstrup, supra:* "The office of a description is not solely to identify the land but also to furnish a means of identification," and accordingly a contract to employ a broker to sell real estate will not be nullified merely because of a defect in the description of the property, but such defect may be cured though not created by parol evidence.

In *Sanchez* v. *Yorba, supra,* the memorandum referred to the property merely as the "Yorba ranch," and it was held that such reference furnished means for readily identifying the property, and that consequently parol evidence was admissible to aid in its identification. Here, as will be observed, the written authorization was signed by the defendant Anthony, in which he chose to designate the property merely as "my house," which was the equivalent of saying the "Anthony house"; and such designation evidently furnished sufficient means for readily identifying the property because all of the witnesses referred to the Hillsborough property as "the Anthony house"; both Mrs. Pray and Sahland had no difficulty in going upon the premises and pointing out to the purchasers the exact property to be sold; there was no dispute about the identity of the property at the time the sale was consummated or when the deed was prepared and executed; and nowhere in his answer did defendant aver, nor did he claim at the trial, that there was any misunderstanding as to the identity of the property referred to in the memorandum. As aptly said in *Russell* v. *Ramm, supra,* in dealing with a like situation: "From all these considerations it is clear that nobody connected with the transaction was at any time misled or under any misapprehension or

uncertainty as to the·particular property referred to'' in the memorandum. ■ On this appeal defendant challenges the legal sufficiency of the testimony tending to show that at the time the authorization was signed defendant owned no other house in California than the one mentioned in the complaint, but, as in the case of *Russell* v. *Ramm, supra,* at the trial he made no attempt to question the truth of such testimony nor did he pretend that on the date of the authorization he was the owner of any other property. Consequently, standing uncontradicted and unimpeached, such testimony was legally sufficient to establish *prima facie,* the fact sought to be proved thereby. As will be noted, there is no question here of the authorization having contained an express contract of employment, and we conclude, therefore, in view of the facts above set forth and the authorities herein cited, that the trial court was fully warranted in holding that the authorization sufficiently complied with the statute of frauds to allow parol evidence to be admitted to identify the property, and that the evidence received in that behalf was legally sufficient for the purpose mentioned.

■ Defendant's second contention is that Mrs. Pray was not the procuring cause of the sale, but this contention is completely negatived by the evidence already set forth, for it appears therefrom that the seller and the buyer were brought together through the efforts of the broker, who had been duly employed as such; that while the contract of employment was still in force, never having been abandoned by the broker nor rescinded by the seller, the sale was consummated by the seller with the buyer the broker had procured, on terms and for a price acceptable to the seller. Under such circumstances the broker is entitled to the payment of the full commissions. (*Pryor* v. *McGuire,* 59 Cal. App. 234 [210 Pac. 532]; *Sessions* v. *Pacific Improvement Co.,* 57 Cal. App. 1 [206 Pac. 653]; *Bail* v. *Glantz,* 78 Cal. App. 49 [248 Pac. 258], and cases cited therein.)

■ Nor was the authorization terminated by lapse of time, as defendant claims. True, approximately five years elapsed between the time it was given and the date of the sale, but the authorization contained a cancellation clause granting defendant the right to cancel the agency upon giving two weeks' notice; and admittedly no such notice was ever given. Furthermore, it is apparent that defendant

at all times prior to his return from Europe considered the authorization in full force, and led Mrs. Pray to believe so, because in 1924 he was still carrying on negotiations with her regarding the purchase price and the amount·of personal property to be included in the sale; and in 1925 his representative Sahland, acting under Anthony's instructions, actively co-operated with Mrs. Pray in carrying on negotiations with the Duffys, which the defendant subsequently ratified by consummating the sale with them; and lastly, upon this point, the sale by Anthony doubtless amounted to an acceptance by him of the benefit of Mrs. Pray's services in initiating and carrying on the negotiations, which estops him, in our opinion, from making the claim that the authorization had lapsed.

Defendant further contends that Mrs. Pray acted as agent for both seller and buyer without the knowledge of the other, and consequently forfeited any commissions due from the seller. This contention is utterly without merit. While Mrs. Pray was testifying on direct examination, counsel for defendant made the statement, in interpreting one of her answers, "you mean your client Mrs. Duffy," to which Mrs. Pray replied, "it was my client after Mrs. Kolster introduced her"; and on cross-examination she stated that she "supposed" she was acting for both the Duffys and Anthony. But it is plain that each answer amounted to no more than the legal conclusion of the witness, which, of course, is wholly insufficient to establish an agency; and, moreover, all of the facts and circumstances show beyond question that she was not the agent of the Duffys. As was said in *Hicks* v. *Wilson*, 197 Cal. 269 [240 Pac. 289], to hold otherwise would be to erroneously declare that whenever a person desiring to buy real estate enters the office of a realty broker to make inquiry concerning the same, and the broker submits property to him, an agency is created giving rise to an obligation on the part of such persons to compensate the broker for services performed under such employment.

We are also unable to sustain defendant's claim that the court erred in admitting in evidence Sahland's letter of October 28, 1925, and the substance of the conversations Mrs. Pray and Mrs. Hart had with him during the Duffy negotiations, for it appears from Sahland's deposition, which was the only evidence in the case on this point (Anthony

not having testified either in person or by deposition), that Sahland was authorized by Anthony to take care of the matter of the sale during the latter's absence; and in this connection the evidence shows that Sahland's activities were fully ratified by Anthony upon his return. The evidence mentioned was not offered or received for the purpose of establishing any part of the contract of employment, as defendant seems to contend, but to show performance on the part of Mrs. Pray and that said contract had been neither abandoned nor rescinded. For the latter purposes the evidence was admissible, even though Sahland's authority to act was not in writing. ■ The recordation of the deed from Anthony to the Duffys was also admissible. (Code Civ. Proc., sec. 1951.) The rule stated in the cases cited and relied upon by defendant on this point became obsolete by virtue of the amendment to said code section in 1889. (Stats. 1889, p. 46.)

The objections made to the court's refusal to give certain instructions proposed by defendant are not of sufficient importance, nor are they presented in such manner, as to require special attention. The record discloses that the jury was fairly and fully instructed on all material issues, and it is evident that the few instructions the court refused to give on behalf of defendant either did not correctly state the law, or were not pertinent to the issues, or the substance thereof was covered in the court's charge, and therefore were properly refused.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 16, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 15, 1929.

All the Justices concurred.