# JOHNSON v. ALLEN.

No. 6779.  Decided April 20, 1945.  (158 P. 2d 134.)

See 17 C. J. S., Contracts, sec. 584; 8 Am. Jur., 998.

*M. C. Harris,* of Logan, and *P. M. Condie,* of Preston, Idaho, for appellant.

*L. E. Nelson,* of Logan, and *A. L. Merrill,* of Pocatello, Idaho, for respondent.

WOLFE, Justice.

Action on a written contract to recover a real estate broker's commission alleged to have been earned under the terms of the contract but not paid. After a jury trial the court entered a money judgment in favor of the plaintiff and the defendant prosecuted this appeal.

On May 20, 1943, the defendant, H. H. Allen, was the owner of several tracts of land located near Swan Lake, Idaho. The defendant, desiring to sell part of this land signed and delivered to the plaintiff the following listing contract which insofar as material here provided:

"Logan, Utah. Date: May 20, 1943

"In consideration of your agreement to list the property described on the reverse side of this contract and to use your efforts to find a purchaser, I hereby grant you the exclusive right for six months from date hereof, and thereafter until you receive from me a 15 day written notice terminating this agreement, to sell said property at the price and terms stated hereon, or at such other price, terms or exchange to which I may agree.

"If said property is sold before the expiration of this agreement by myself or by any other persons, I agree to pay to you the regular commission of 5%, or if it is sold within three months after such expiration to any person to whom you have previously offered it, I agree to pay to you the commission as above stated.

"Dated at Logan, Utah May 20, 1943
"Accepted May 20, 1943 H. H. Allen, Owner."

(Reverse Side of Contract)

"Date: May 20, 1943

"1. No. . . . . .
"2. Size 1000 acres Lot . . . . Block . . . . .
"3. Plat or Sub-Division: All land on Ranch including Cattle Range for 103 head.
"4. Location: Swan Lake, Idaho. Between . . . . and . . . . .
"5. Owner: H. H. Allen. Address . . . . Phones: Res. . . . .
Bus. . . . .
"6. Price: $60,000.00 Cash $30,000.00 Bal. to be arranged Including Interest . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"10. Amount of Mortgage, Federal Loan.
"11. Will consider exchange for . . . . Including all cattle, 15 head brood sows, and all equipment and machinery.
"12. Remarks: Excluding buildings used for sheep.

"Signed: H. H. Allen."

It is shown by the uncontradicted evidence that the plaintiff immediately after the signing of the listing contract diligently went about his duties thereunder in an attempt to find a purchaser; that within the six month period stipulated in the listing contract the defendant sold approximately 1000 acres of land near Swan Lake, Idaho for a price in excess of $60,000; that defendant had not prior to said sale or at all given plaintiff 15 days' written notice that the listing contract was terminated; and that defendant refused to pay the plaintiff his commission as provided in said contract. On conflicting evidence the jury found that the listing contract was signed by the defendant, Allen, on May 20, 1943, in Logan, Utah. This must also be considered by us as an established fact.

By way of defense the defendant contended (1) that the plaintiff fraudulently induced defendant to sign said listing contract under the misrepresentation that the listing was for only 60 days; (2) that plaintiff in taking said listing contract and performing his duties thereunder was acting as a real estate broker in the State of Idaho in violation of various Idaho statutes that required a real estate broker to procure a license and expressly made such a license a prerequisite to the recovery of a commission for services rendered as a real estate broker; (3) that the listing contract was within the Statute of Frauds and was void thereunder because the land listed in the contract was not described with sufficient particularity; (4) that the contract was void because the land, under Idaho law, was the community property of the defendant, Allen, and his wife, and that the wife had not signed the listing contract.

The trial court ruled that as a matter of law there was not sufficient evidence of fraud to go to the jury. The remaining issues of fact were submitted to the jury by special interrogatories. The jury answered that the listing contract was made in Utah; that the plaintiff had on or about September 2, 1943, buyers able, willing and ready to buy the land and that within the six months period from date of contract defendant sold the land listed in the

contract. Upon this special verdict the court entered judgment for the plaintiff, and thus ruled against defendant on all the foregoing contentions.

The defendant on this appeal first contends that the trial court erred in taking the issue of fraud from the jury. The only fraud claimed is that the plaintiff induced the defendant to sign the listing contract by misrepresenting that the listing was for only sixty days when in fact it specified six months. The evidence was in dispute concerning the place and time of the signing of the contract. The defendant stated that it was signed at his home in Swan Lake and that his wife and a daughter were there at the time. Both the wife and daughter testified that at that time the plaintiff told the defendant that the contract was only for sixty days. Defendant also testified that he was told that it was a sixty day listing and that he would not have signed it had he known it specified six months.

In support of the trial court's action in taking the issue of fraud from the jury the plaintiff points to the fact that the contract was short and could have been easily read; that the defendant had plenty of time to read it; and that there was no artifice or trick to prevent him from reading it. It is fundamental that before any one can have relief from a claimed fraud he must show not only that he relied on the misrepresentation but also that he had the right to rely on it. *Stuck et al.* v. *Delta Land & Water Co.*, 63 Utah 495, 227 P. 791; *Carbon County* v. *Draper*, 84 Mont. 413, 276 P. 667.

It is on the grounds of unjustifiable reliance that courts deny relief to those who, relying on representations as to contents, sign written contracts without reading them. As a general proposition courts have adhered to the theory that one sui juris in possession of all his faculties and dealing at arms length is not permitted by the law to rely exclusively upon the representations of the other contracting party as to the contents of a written contract. Courts look for something said or done which would be reasonably calculated to disarm a reasonably

prudent person so that he would sign the contract without reading it and in the absence of some act or artifice in inducing the other part to refrain from reading the contract relief from the fraud is often denied. This general rule is stated in *Kelley* v. *Salt Lake Transportation Co.,* 100 Utah 436, 116 P. 2d 383, and *Brown* v. *Union Pac. R. Co.,* 76 Utah 475, 290 P. 759. See also *Kreate* v. *Miller,* 226 Ky. 444, 11 S. W. 2d 99; *Kaiser* v. *Nummerdor,* 120 Wis. 234, 97 N. W. 932; *Andrus* v. *St. Louis Smelting & Refining Co.,* 130 U. S. 643, 9 S. Ct. 645, 32 L. Ed. 1054; *Williams* v. *Williams,* 220 N. C. 806, 18 S. E. 2d 364; Cooley on Torts, 3d Ed., p. 933.

It is at first blush disturbing that a person may defend against fraud by stating "You should not have trusted or believed me" or "Had you not been so gullible you ▪ would not have been deceived." The law will seldom allow the plea of contributory negligence to a wilful wrong. Indeed Williston states that the modern trend

"is certainly toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive wilful fraud or deprive the defrauded person of his remedy." Williston on Contracts, Rev. Ed., Vol. 5, Sec. 1516, p. 4231.

As noted by Cooley in his book, supra,

"There is no inflexible rule to this effect [that a person failing to read a contract before signing it will be denied relief] and it would be a reproach to the law if there were. The ways of fraud are indefinite in their diversity, and if into any one of them all the law refuses to follow for the rescue of victims, it will be in the direction of that one that fraudulent devices will specially tend. It can never be either wise or safe to mark out specific boundaries within which they shall have impunity; but each case must be considered on its own facts, and every case will have peculiarities of its own, by which it may be judged." See also *Brown* v. *Union Pac. R. Co.,* 76 Utah 475, 290 P. 759, to the same effect.

The better view seems to be that a person will be given relief from fraud even though he failed to read the contract

before signing if he was by some act or artifice induced to refrain from reading it, or if because of the circumstances he was justified in relying on the representations made. See Williston on Contracts, Rev. Ed., p. 4234; *Daily Telegram Co. of Long Beach* v. *Long Beach Press Pub. Co.,* 133 Cal. App. 140, 23 P. 2d 833; *Hanscom* v. *Drullard,* 79 Cal. 234, 237, 21 P. 736, 737. In the latter case it is noted

"A man may perhaps be able to discover for himself what he ought to know if left to his own devices, but where he is induced by the artifice of another not to use his opportunities it would seem hardly fair that the one using the trick or misrepresentation should remain protected."

Still when parties undertake to reduce their oral negotiations to writing both must understand that the writing is to express the contract. If one in defense to an action on the contract were to be permitted to say that the other falsely represented that something had been included or excluded therefrom, the writing would be of little value. Every case could present a jury question as to whether the writing correctly expressed the agreement. In *Kelley* v. *Salt Lake Transportation Co.,* supra [100 Utah 436, 116 P. 2d 385], we quoted with approval from *Pennsylvania R. Co.* v. *Shay,* 82 Pa. 198, in which it was stated:

" 'It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury.' "

In the instant case there is nothing to show a relationship of trust or confidence between the plaintiff and defendant. The signing of the contract was an arms length transaction. The defendant was not rushed into signing the contract—he had plenty of time to examine it. Nor was there any artifice or trick or attempt on the part of the plaintiff to prevent the reading of the contract by the defendant. The contract was very

short and could have been easily read. It was on a printed form and the six month listing was printed thereon. Defendant had signed four identical printed contracts listing other tracts of land and all of these other four had six month listings. Under these circumstances the law would not permit the defendant to rely exclusively on the representation that the contract was a sixty day listing. It further does not appear that there was any reliance on the representation. On September 2, 1943, nearly seven weeks after the alleged sixty days would have expired, the plaintiff took prospective purchasers to look at the land. Defendant showed them the land, but at no time did he mention the fact that he thought the listing contract was at an end. The trial court correctly took the fraud issue from the jury.

The defendant next contends that the contract is void under the Idaho Statute of Frauds as interpreted by the Idaho courts in that it does not describe with particularity the property which the plaintiff was employed to sell. In supporting this contention the defendant takes the view that since the land which was the subject of the contract is located in Idaho, the contract should be construed in light of the Idaho statutes and court decisions. Plaintiff counters that since the jury found that the contract was made in Utah, Utah law should control. This point of difference is material for it appears that under the Idaho cases the broker's listing contract describing the land as

"Size: 1000 acres, ...... All land on Ranch ...... Location: Swan Lake, Idaho."

may not be sufficiently definite to be valid under the Idaho Statute of Frauds. See *Murphy* v. *Livesay,* 34 Idaho 793, 197 P. 536; *Laker Land & Loans* v. *Nye,* 40 Idaho 793, 237 P. 630.

In making the argument that Idaho law should govern because the listing contract covered Idaho lands, the de-

fendant fails to note the true nature of the contract involved. It does not purport to transfer an interest in Idaho land; rather it is a contract of employment. See ■ *Toomy* v. *Dunphy,* 86 Cal. 639, 25 P. 130; *Kennedy* v. *Merickel,* 8 Cal. App. 378, 97 P. 81; *Callaway* v. *Prettyman,* 218 Pa. 293, 67 A. 418. Its validity is to be determined by the law of the place where the contract was made. *Callaway* v. *Prettyman,* supra; *Detroit & Cleveland Nav. Co.* v. *Hade,* 106 Ohio St. 464, 140 N. E. 180; *Selover, Bates & Co.* v. *Walsh,* 226 U. S. 112, 33 S. Ct. 69, 57 L. Ed. 146; *Polson* v. *Stewart,* 167 Mass. 211, 45 N. E. 737, 36 L. R. A. 771, 57 Am. St. Rep. 442; Story, Conflict of Laws, Sec. 262; Beale, Conflicts of Laws, Vol. II, pp. 1181, 1191.

In *Callaway* v. *Prettyman,* supra, the listing contract was made in Pennsylvania to sell real estate situated in New Jersey. New Jersey law required the listing contract to be in writing and under New Jersey law the contract would have apparently been invalid. The Pennsylvania Supreme Court held that

"the validity of the contract as affected by the statute of frauds is controlled by the law of this state, and not by that of New Jersey, and Callaway's contract of employment, made in this city, was valid, as the law of the place of making the contract governs as to the formalities." [218 Pa. 293, 67 A. 419.]

We conclude that the law of the place of the making governs the validity of the contract.

Sec. 33-5-4 (5), U. C. A. 1943, expressly provides 8 that

"Every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation" shall be void unless some "note or memorandum therefor, is in writing subscribed by the party to be charged."

The construction of this section as to the sufficiency of a description of the real estate is apparently a matter of

first impression in this state. The section is almost identical to Sec. 1624(6) of the California Civil Code. In an early case the Supreme Court of California in construing this provision noted that its chief element was the employment. *Toomy* v. *Dunphy,* 86 Cal. 639, 25 P. 130. The provision has subsequently been before the California courts many times. Many of the cases are cited in *Pray* v. *Anthony,* 96 Cal. App. 772, 274 P. 1024, 1026, wherein the court noted that:

"As uniformly held by numerous decisions in this state upon the subject, the essential part of a contract to employ a real estate broker, so far as the statute of frauds is concerned, is the matter of the employment and consequently need not describe the land specifically, if the terms of the employment can be made definite without it. The description of the land and its identity are only incidental to the main purposes of the contract, and, since contracts of that nature do not purport to involve the title or right of possession of land, much greater liberality is allowed in construing and curing defective descriptions therein than in cases of executory contracts to convey land or in deeds of grant, for, as stated, so far as the statute of frauds is concerned, the terms of the employment are the essential parts. The well-established rule is, therefore, that broker's contracts are not to be declared void merely because of a defect, uncertainty or ambiguity in the description of the property to be sold, when such defect can be cured by allegations and proof of extrinsic facts or circumstances."

This doctrine was approved by the Supreme Court in *Needham* v. *Abbot Kinney Co.,* 217 Cal. 72, 17 P. 2d 109.

The latter case held a description "The properties owned by the Abbot Kinney Company" to be sufficient. In *Pray* v. *Anthony* case, supra, the description "If you will produce a customer for my house," to be sufficient when it was shown that the writer had no other house in California. In *Sanchez* v. *Yorba,* 8 Cal. App. 490, 97 P. 205, the court allowed recovery under a contract describing the property only as the "Yorba Ranch." Where there was a dispute as to which property was intended by the description it would be reasonable to hold that the broker had the burden

of showing by clear and convincing extrinsic evidence that the description was intended to cover the particular property which he contended that it covered.

But in the instant case, as noted in *Russell* v. *Ramm,* 200 Cal. 348, 254 P. 532, 540,

"it is clear that nobody connected with the transaction was at any time misled or under any misapprehension or uncertainty as to the particular properties referred to"

in the contract. The terms of the employment, the amount of compensation, and the length of time the listing was to run were all certain. It is not disputed that the lands sold were the lands listed in the contract. The trial court correctly held that the description

"Size: 1000 acres ...... All land on Ranch including Cattle Range for 103 head ...... Location: Swan Lake, Idaho"

was sufficiently certain. The contract was not void under the Statute of Frauds.

The contention that the contract was void because of the fact that the plaintiff did not have an Idaho real estate broker's license is also without merit. The jury found that the contract was made in Utah. And though it employed plaintiff to procure a purchaser for lands located in Idaho, the sale did for that reason not have to be consummated in Idaho. Under its terms plaintiff was authorized to sell the land to anyone who was willing to pay the agreed purchase price. Under its terms the contract could have been performed anywhere. See *Detroit & Cleveland Nav. Co.* v. *Hade,* supra, 106 Ohio St. 464, 140 N. E. 180. Being a Utah contract and not by its terms requiring plaintiff to engage in the business of a real estate broker in Idaho, the contract was not invalid because of the fact that the plaintiff had no Idaho broker's license.

The contention that the contract was void because of the fact that the wife, who under Idaho community property law was a part owner of the land, did not sign the contract

is based in a statute relating solely to transfers or contracts to transfer an interest in the land itself. ■ This was a contract of employment and did not purport to convey an interest in land. The defendant, by this contract, employed the plaintiff to find a purchaser for certain lands. When plaintiff did the work he was entitled to the commission agreed upon whether the land was sold or not, or whether defendant owned the land or not. No case has been cited and we have found none holding that such a listing contract is void unless signed by the wife. The Utah Statute of Frauds does not require that such a contract be signed by the "owner" of the lands listed, but only that it be signed "by the party to be charged." Defendant employed plaintiff to do certain work by a valid written contract. Plaintiff did the work and is entitled to the agreed compensation.

Defendant made a motion for a new trial which motion was denied. This ruling is assigned as error. The motion was based on an affidavit showing that one juror was manager of a bank to which the plaintiff was indebted and also was the administrator of an estate which ■ listed a $12,000 note of the plaintiff's as one of the assets. It is contended that if these facts had been known, it would have shown the relationship of debtor and creditor between the plaintiff and the juror, which would have been grounds for challenge under Subdivision 3, Section 104-24-10, U. C. A. 1943. There is no direct relationship of debtor and creditor between the juror and the plaintiff. Assuming, without deciding that the jurors' connection with the plaintiff's creditors was so close as to permit a challenge under Section 104-24-10(3), it still could not be held the trial court erred. Counsel for the defendant did not attempt on voir dire to ascertain the existence of such relationship so that he could interpose a challenge. Rather, as noted by the trial court

"counsel is attempting to impose a legal obligation upon a lay juror to disclose technical sources of possible prejudice, which counsel, himself, failed to pursue."

This case must thus be distinguished from cases such as *Lund* v. *District Court*, 90 Utah 433, 62 P. 2d 278, and *State* v. *Guynn*, 87 Utah 320, 48 P. 2d 902, on which defendant relies, wherein the juror answered falsely questions which, had they been answered truthfully, would have revealed the existence of grounds for a challenge. In such cases it could hardly be held that the right to interpose a challenge had been waived.

Here, however, counsel for the defendant propounded questions which apparently satisfied him that the jurors chosen were competent and without bias. The relationship of debtor and creditor, even if shown to exist, does not ipso facto disqualify the juror. The statute, Section 104-24-10, merely provides that "challenges for cause may be taken" on the ground. As noted in *Browning* v. *Bank of Vernal*, 60 Utah 197, 207 P. 462, this is a right which may be waived. The juror answered all questions put to him and there is nothing to show that he did not answer honestly. There is nothing in this record showing actual prejudice. We cannot say that the trial court erred in denying a motion for a new trial.

Judgment affirmed. Costs to respondent.

LARSON, C. J., and McDONOUGH and TURNER, JJ., concur.

WADE, Justice.

I concur with the result, and with the reasoning of the prevailing opinion except on the question of taking the issue of fraud from the jury. I do not agree, however, that where a person by his willful and deliberate misrepresentation as to the contents of a written instrument induces another to sign the same without reading, believing that its contents are as represented, that the person making the misrepresentation should be allowed to retain his advantage thus obtained merely because the other person was negligent in taking the other person's word and in signing the instru-

ment without reading it. I agree with Williston as stated in the prevailing opinion,

"that the modern trend 'is certainly toward the doctrine that negligence in trusting in a misrepresentation will not excuse positive wilful fraud or deprive the defrauded person of his remedy'." Williston and Thompson, "Williston on Contract," Vol. 5, Section 1516, p. 4231.

Although the weight of authority may be to the contrary that in my opinion is a statement of the correct and better rule.

Nor am I prepared to say that under the facts disclosed here, even under the rule announced in the prevailing opinion the matter should not have been submitted to the jury. Here the dealings of the parties had been somewhat intimate, the defendant had signed four other previous listings with plaintiff and some property had been sold thereunder. Under those circumstances I am not prepared to say that their relationship was not sufficiently confidential to require that the issue be submitted to the jury.

I do, however, agree

"that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable; otherwise it should be withdrawn from the jury." *Kelley* v. *Salt Lake Transportation Company,* 100 Utah 436, 116 P. 2d 383, 385.

I think this question was properly withdrawn from the jury for the following reasons: Defendant's evidence was to the effect that he was induced to sign the listing on the false representation that it was only a sixty day listing when in fact under its terms it was a six months listing. This listing and the other four listings which defendant had recently signed, and presumably knew the contents thereof, contained the following provision:

*"I hereby grant you the exclusive right for six months from date hereof, and thereafter until you receive from me a 15 day written notice terminating this agreement, to sell said property,* * * *."* (Italics ours.)

∎

Under the foregoing italicized provision, unless he served the 15 day written notice terminating the agreement, it would be immaterial which it was, a sixty day or a six months listing. He makes no claim that he served such notice. Under such circumstances I am of the opinion that the misrepresentation was not a material one and therefore was properly withdrawn from the jury.